STEELE, Respondent, v. GRAY and others, Appellants. [Case No. 50.] *

GODARD and another, Appellants, v. GRAY and others, Respondents. [Case No. 560.] *

WASSENAAR, Appellant, v. GRAY and others, Respondents. [Case No. 561.] *

*Nos. 50, 560, 561. Argued June 3, 1974.—Decided June 28, 1974.*
(Also reported in 219 N. W. 2d 312 and 223 N. W. 2d 614.)

---

* Motions for rehearing denied, without costs, on November 26, 1974.

425

For the appellants in Case No. 50, and the respondents in Cases No. 560 and 561, the cause was argued by *David J. Becker,* assistant attorney general, with whom on the briefs was *Robert W. Warren,* attorney general.

For the appellants in Cases No. 560 and 561 there were briefs by *Anthony J. Theodore* and *Charles Bennett Vetzner,* both of Madison Corrections Legal Services Program, and oral argument by *Mr. Vetzner.*

For the respondent in Case No. 50 there was a brief by *Anthony J. Theodore* and oral argument by *Charles Bennett Vetzner,* both of Madison Corrections Legal Services Program.

HEFFERNAN, J.   At oral argument, the assistant attorney general representing the officers of the department of health & social services conceded that each of the prisoners was entitled to a full due process hearing prior to revocation of good time. He stated that the department now recognizes and follows the mandate of *United States ex rel. Miller v. Twomey* (7th Cir. 1973), 479 Fed. 2d 701, 718, U. S. Sup. Ct. certiorari denied (1974).

That case followed the principles of *Morrissey v. Brewer* (1972), 408 U. S. 471, 481, 92 Sup. Ct. 2593, 33

L. Ed. 2d 484. Commenting on *Morrissey v. Brewer*, the Seventh Circuit said:

"We think the analysis in *Morrissey* points to the conclusion that the due process clause does apply to the revocation of good time credits.

"The time when an inmate may enjoy liberty is directly affected by the disallowance of statutory good time. In Green's case, for example, the discipline administered by the prison authorities will postpone the time of release for at least 21 months. The cancellation of such credits thus inflicts the same kind of 'grievous loss' on the prisoner as does the revocation of parole. See 408 U. S. at 482, 92 S. Ct. 2593." (P. 715)

The court detailed the minimum requirements of due process that the supreme court listed in *Morrissey* for parole revocation hearings:

[" '(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation) ; (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.' 408 U. S. at 489, 92 S. Ct. at 2604." *Miller v. Twomey*, p. 715.] \*\*\*

We conclude that *Miller v. Twomey* and *Morrissey v. Brewer* determine the due process requirements to be followed by this court. We hold that the due process standards capsulized in *Morrissey, supra,* are to be applied in administrative hearings called for the purpose of considering the revocation of good time.

It should be noted that *Morrissey* calls for a two-pronged test: (1) Did the prisoner conduct himself in such a way as to invoke the department's authority to

---

\*\*\* Modified. See memorandum opinion on rehearing, post, p. 431a.

revoke, and (2) in the exercise of proper discretion is it in the best interests of the prisoner, of the penal system, and of society to effect a revocation of good time. *See, State ex rel. Plotkin v. H&SS Department* (1974), 63 Wis. 2d 535, 217 N. W. 2d 641.

Thus, the conviction on the charge of escape merely satisfies the first prong of the test. It is also true, however, that a conviction on the charge of escape is not a prerequisite if there is proof of the misconduct in a due process administrative hearing. The revocation of good time does not necessarily need to await the disposition of the additional criminal charge of escape.

Since none of the prisoners was afforded a due process hearing, all four of the revocations are fatally defective. This requires a reversal of the judgment in respect to Godard, Wassenaar, and Guimond.

The revocation of Steele's good time was set aside on the ground that the revoking officer did not have the authority to do so. As discussed below, we conclude that there was a proper delegation of the authority to revoke. The trial judge's determination to set aside Steele's revocation is affirmed, however, on the ground that he was not afforded a due process hearing.

We do not agree, however, that Steele's revocation was properly set aside because of any unlawful delegation of authority to the administrator of the division of corrections.

Accordingly, the second question posed by these appeals is presented. Prior to the effective date of ch. 261, Laws of 1971 (now sec. 15.02 (4), Stats.), did the secretary of the department of health & social services have authority to delegate the power to revoke good time to his subordinates in the department? We conclude he had that authority.

The basic authority to revoke good time is set forth in sec. 53.11 (2), Stats.:

"Any inmate who violates any regulation of the prison or refuses or neglects to perform the duties required of

him shall be subject to forfeiture of any good time previously granted or earned under this chapter, 5 days for the first offense, 10 days for the second offense and 20 days for the third or each subsequent offense. Good time so forfeited shall not be restored. In addition, the department, or the warden or the superintendent, with the approval of the department, may cancel all or part of such good time."

It is argued that the secretary has all the powers and duties of the board, and, therefore, in terms of the statute, can be considered the "head" of the department.

The state contends that "department" as used in the statute is synonymous with head of the department, the secretary of health & social services. Accordingly, the state here relies upon sec. 15.05 (1) (b), Stats., which provides in part:

"All of the administrative powers and duties of the department are vested in the secretary, to be administered by him under the direction of the board. The secretary, with the approval of the board, shall establish rules for administering the department and performing the duties assigned to the department."

It is conceded by the state that an officer in whom discretionary power is vested cannot delegate that power without statutory authority to do so. That is a correct statement of Wisconsin law. *See, School Dist. v. Callahan* (1941), 237 Wis. 560, 576, 577, 297 N. W. 407; *Ledgering v. State* (1963), 63 Wash. 2d 94, 98, 385 Pac. 2d 522.

Sec. 15.05 (1) (b), Stats., it is argued by the state, provides that specific statutory authority for the delegation. We disagree.

That section merely authorizes the secretary to make rules for the administration and performance of duties. It is silent on the question of the delegation of duties that are vested by law in the department.

Reliance for the delegation of the power of revocation is also placed, correctly we conclude, on the powers vested

in the secretary by sec. 15.02 (4), Stats., which provides in part:

"The head of each department or independent agency shall, subject to the approval of the governor or, where applicable, the coordinating council for higher education, establish the internal organization of the department or independent agency and allocate and reallocate duties and functions not assigned by law to an officer or any subunit of the department or independent agency to promote economic and efficient administration and operation of the department or independent agency."

Under this statute, the secretary can choose to exercise the departmental function of revocation himself or can reallocate such departmental duty to a subordinate. This is what was done. It is clear from the record that there was a prima facie delegation of authority to the administrator of the division of corrections. The terms of sec. 15.02 (4), Stats., makes de jure that delegation of authority.

While this interpretation of sec. 15.02 (4), Stats., is contested by the prisoner appellants, that controversy is immaterial in that it does not affect the disposition of the cases before us. Rather, we dispose of them on the ground that the prisoners were not afforded a proper hearing. We have, however, examined the entire legislative history of the appropriate statutes and conclude that the authority to revoke was not specifically vested in the secretary by sec. 53.11 (2), but in the department, and is subject to reallocation by the secretary.

We thus conclude that the delegation of the authority to revoke good time was valid in each case.

The disposition of these cases, however, must be ruled by *Morrissey v. Brewer, supra,* and *Miller v. Twomey, supra,* which mandate a due-process hearing. Each of the prisoners was denied such hearing. Accordingly, the trial court's judgment setting aside Steele's revocation of good time is affirmed, and the judgment affirming the revo-

cation of good time in the cases of Godard, Wassenaar, and Guimond is reversed.

In the event the department undertakes to revoke the good time of the prisoners whose cases are herein considered, a due process hearing, as set forth above, shall be afforded. As to all others, the requirement for "[a due process] hearing granted by this decision shall be prospective only except as to those petitions [or actions] on file in this court or any trial court in the state as of the date of this mandate." *State ex rel. Johnson v. Cady* (1971), 50 Wis. 2d 540, 556, 185 N. W. 2d 306.

Until such time as a due process hearing is held, the good time, which was purportedly revoked, is restored to each of the four prisoners herein.

*By the Court.*—The judgment in Case No. 50, *Dennis L. Steele v. Ramon L. Gray, et al.*, is affirmed; the judgments in Case No. 560, *Victor Godard et al. v. Ramon Gray, et al.*, and in Case No. 561, *Ronald K. Wassenaar v. Ramon Gray, et al.*, are reversed.

The following memorandum was filed December 4, 1974.

PER CURIAM *(on motion for rehearing)*. When, in our original opinion, we incorporated the minimum due process requirements of *Morrissey v. Brewer* (1972), 408 U. S. 471, 92 Sup. Ct. 2593, 33 L. Ed. 2d 484, as the standards to be applied in good time revocation hearings, we did so believing federal law required that decision. However, *Wolff v. McDonnell* (1974), 418 U. S. 539, 94 Sup. Ct. 2963, 41 L. Ed. 2d 935, decided two days prior to our decision in this case, held that the due-process procedures to be afforded the prisoner in a disciplinary proceeding differ from the procedures to be afforded the parolee or probationer in a revocation hearing. Accordingly, we modify our opinion to afford prisoners at prison disciplinary proceedings those rights outlined in *Wolff*:

1. "[W]ritten notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense. At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [impartial hearing body]." (p. 564)

2. "[T]here must be a 'written statement by the fact-finders as to the evidence relied on and reasons' for the disciplinary action." (p. 564)

3. "[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. . . . Although we do not prescribe it, it would be useful for the [impartial hearing body] to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity or the hazards presented in individual cases." (p. 566)

4. "[W]e are not prepared to hold that inmates have a right to either retained or appointed counsel in disciplinary proceedings.

"Where an illiterate inmate is involved, however, or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." (p. 570)

5. The inmate is also entitled to a neutral hearing officer or tribunal which will be likely to arrive at a decision without the likelihood of arbitrary or capricious action. The *Wolff* standard is vague in respect to the nature of the tribunal, inasmuch as the court concluded that no issue was raised by the facts concerning the impartiality of the Nebraska procedure. We do not herein attempt to explicate the *Wolff* standard in this

regard. *Wolff* indicates that the tribunal should be neutral and impartial to the extent that its discretion should be circumscribed by established rules. *Wolff*, by not finding the Nebraska disciplinary tribunal deficient, makes it clear that a due process hearing can be held by a board that is a part of the internal functioning of a correction system.

Since the prisoners involved in this action were afforded no hearing whatsoever, the mandate set forth in the original opinion remains unchanged.

The motion for rehearing is denied without costs.