Angelo **SANCHEZ**, Plaintiff,

v.

**Wilbur J. SCHMIDT**, Secretary of the Wisconsin Department of Health and Social Services and his agents and subordinates of the State Board of Parole, et al., Defendants.

No. 72-C-189.

United States District Court,
W. D. Wisconsin.

Jan. 4, 1973.

Angelo Sanchez, pro se.

Mary V. Bowman, Asst. Atty. Gen., Madison, Wis., for defendant Mary Bowman.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a civil action for injunctive and monetary relief. Plaintiff has been granted leave to proceed *in forma pau-peris.* Jurisdiction is claimed under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).

In his complaint plaintiff alleges that he is presently confined in Wisconsin State Prison; that on or about January 31, 1972, he was released from prison on "discretionary" parole; that in early February, 1972, plaintiff was charged with assault but the charge was later dismissed; that on February 15, 1972, plaintiff was arrested in Milwaukee, Wisconsin, and charged with carrying a concealed weapon; that between February 15, 1972, and March 10, 1972, plaintiff was incarcerated in the Milwaukee County Jail because he was unable to make bail; that on March 10, 1972, plaintiff pleaded guilty and was sentenced to serve a term of 90 days in the Milwaukee County House of Corrections; that on March 20, 1972, plaintiff was serving that sentence in the House of Corrections; that on that date a parole agent, Joseph Vento, informed plaintiff that he had violated his parole by carrying a concealed weapon; that plaintiff signed a waiver of his right to a parole revocation hearing; and that on April 6, 1972, plaintiff was returned to Wisconsin State Prison to serve time resulting from his parole violation concurrently with his 90 day sentence. The complaint alleges further that on May 11, 1972, plaintiff appeared before the parole board; that the board forfeited eight months and fifteen days of his good time, in part because the board believed that plaintiff had been involved in the assault with which he was charged in early February; and that plaintiff's original prison sentence, which he had been serving on parole, was tolled from February 15, the date of his violation, until April 6, the date of his return to the prison.

On the basis of these allegations plaintiff advances four claims: (1) the determination that his sentence should be tolled between February 15 and April 6 was made without due process; (2) plaintiff is entitled to have the period of incarceration from February 15 to

March 10 (the date of his plea) credited toward either his original sentence or toward his 90 day sentence; (3) plaintiff is entitled to have the period of incarceration from March 10 to April 6 credited toward his original sentence since the state had an obligation to allow him to serve his 90 day sentence at the prison rather than at the House of Corrections; and (4) plaintiff's good time was forfeited without due process.

Plaintiff has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The parties have submitted affidavits in support of their positions on the motion. On the basis of these materials I find that there is no genuine issue as to the following material facts.

### FACTS

On January 31, 1972, plaintiff was released from prison on "discretionary" parole. In early February, 1972, plaintiff was charged with assault, but the charge was later dismissed. Plaintiff was arrested again on February 15, 1972, on a charge of carrying a concealed weapon. Because he was unable to make bail he remained in the Milwaukee County Jail until March 10, 1972, when he pleaded guilty and was sentenced to 90 days in the Milwaukee County House of Corrections. On March 20, 1972, while plaintiff was serving that sentence in the House of Corrections, a parole agent, Joseph Vento, informed plaintiff that he had violated parole by carrying a concealed weapon. Plaintiff signed a waiver of his right to a parole revocation hearing and was returned to the Wisconsin State Prison on April 6, 1972, to serve time resulting from his parole violation concurrently with his 90 day sentence. When the parole board met on May 11, 1972, plaintiff appeared before the board and was informed that it was considering forfeiting his good time because of reliable reports of his misconduct during February, 1972. Plaintiff was not represented by an attorney or by any other person. He was invited to offer reasons why his good time should not be forfeited. After considering the reasons he offered and other factors, the board determined that eight months and fifteen days of plaintiff's good time would be forfeited. Plaintiff's original prison sentence, which he had been serving on parole, was tolled from February 15, the date of his violation, until April 6, the date of his return to prison.

### OPINION

■ Plaintiff's first claim is that the determination that his sentence should be tolled was made without due process. This claim does not challenge the propriety of the revocation of plaintiff's parole, nor does it challenge the tolling itself. Rather it centers on the procedure by which the tolling determination is made. Wis.Stat. § 57.072 (1969) provides for tolling of sentences between the date of parole violation and the date of the parolee's return to prison. Of course plaintiff was entitled to a hearing on the question whether he violated parole. If the outcome of such a hearing were a determination that a violation did occur, the determination would include a finding of the date on which the violation occurred. In the present case, in his waiver of his right to a parole hearing, plaintiff admitted that he violated parole and that the violation occurred on February 15, 1972.

■ Thus the determination of the date on which the violation occurred is determined by a procedurally fair method. The remaining determinations to be made under § 57.072 involve only basic arithmetic and therefore need not be accompanied by any procedural guarantees. Thus plaintiff is not entitled to judgment on this claim. Although defendants have not moved for summary judgment, it is proper to render judgment in their favor if it appears that they are entitled to judgment as a matter of law. 3 Barron and Holtzoff, Federal Practice and Procedure, § 1239 (1958). I have concluded that defend-

ants are entitled to judgment as a matter of law on this claim.

■ Plaintiff's second claim is that the equal protection clause entitles him to have the period of incarceration from February 15 to March 10 (the date of his plea) credited toward either his original sentence or toward his 90 day sentence. In support of this contention plaintiff cites several cases dealing with the constitutionality of denying credit towards an inmate's sentence for time served prior to conviction. I have determined that plaintiff lacks standing to assert that the 24 days in question should be credited to his 90 day sentence. Since plaintiff served at least the last 60 days of that sentence concurrently with the time he served pursuant to his parole revocation and since the latter period was substantially longer than his 90 day sentence, crediting 24 days to the 90 day obligation would in no way hasten plaintiff's release.

■ Plaintiff does have standing to assert that the 24 days must be credited toward his original sentence. However, plaintiff's equal protection argument as to this claim is not persuasive. In the normal criminal process a judge establishes bail, which some defendants are able to pay and other defendants are not. Plaintiff's theory is that, in order to avoid discriminating against the defendant who is unable to make bail, the time he serves prior to his trial must be credited towards his sentence. However, since plaintiff does not assert that persons arrested for violating parole are ever afforded an opportunity for release on bail, the differential treatment of rich and poor, which is the premise of his argument, is absent.

As stated earlier in this opinion, it is appropriate for me to grant summary judgment to defendants although they have not made such a motion. I have concluded that there are no issues of material fact as to plaintiff's second claim and that defendants are entitled to judgment as a matter of law on that claim.

■ Plaintiff's third claim is that he is entitled to have the period of incarceration from March 10 to April 6 credited toward his original sentence since the state had an obligation to allow him to serve his 90 days at the prison rather than at the House of Corrections. This argument assumes that plaintiff has a constitutional right to serve his entire 90 day sentence concurrently with his original sentence. I conclude that no such right exists and that defendants are entitled to judgment as a matter of law on this third claim.

■ Finally, plaintiff urges that he was entitled to representation by counsel at the proceeding in which his good time was forfeited. Under Wisconsin law there are two types of parole: discretionary parole and mandatory release parole. An inmate released prior to his mandatory release date [1] is on discretionary parole, and an inmate released on his mandatory release date is on mandatory release parole. A discretionary parolee whose mandatory release date arrives while he is on parole becomes a mandatory release parolee. Under Wis.Stat. § 53.11(7)(b) (1969) a mandatory release parolee whose parole is revoked must serve the amount by which his original sentence was reduced by good time.[2] Because in such case forfeiture of all good time is automatic, no proceeding is necessary for determining the amount of good time which should be forfeited. However, when a discretionary parolee's parole is revoked, all or only a portion of his good time may be forfeited. Wis.Stat. § 53.11(2a) (1969). In such cases the Department of Health and Social Services conducts a

---

1. The mandatory release date is determined by subtracting from the term for which the inmate was sentenced the amount of good time which he has earned and not forfeited.

2. In serving the balance of his sentence, however, the inmate may be permitted to earn good time. Wis.Stat. § 53.11(7)(b) (1969).

hearing to determine the amount of good time, if any, which should be forfeited.

Plaintiff in the instant case was on discretionary parole at the time his parole was revoked, and he urges that he was entitled to be represented by counsel at the hearing concerning the forfeiture of his good time. Pertinent to this question is Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), in which petitioners were convicted and placed on probation. After probation was revoked a deferred sentencing hearing took place in which petitioners were not represented by counsel. In holding that petitioners were entitled to representation by counsel, the Court spoke of the need for counsel "in marshaling the facts [and] introducing evidence of mitigating circumstances" and in preserving any legal rights which might be lost if not exercised at that stage. *Id.*, at 135, 88 S.Ct. at 257. (*See also* McConnel v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968)). In contrast with the sentencing hearing, is the parole release hearing, where inmates are not entitled to representation by counsel. Menechino v. Oswald, 430 F.2d 403 (2d Cir. 1970). The issue in the present case is whether the hearing for the forfeiture of good time more closely resembles a sentencing hearing or a parole release hearing.

I have concluded that the forfeiture hearing more closely resembles a parole release hearing and that therefore plaintiff was not entitled to representation by counsel. The most apparent distinction between a forfeiture hearing and a sentencing hearing is that in the former proceeding there is no danger of losing the legal rights which

often can be waived if not asserted at sentencing. In *Mempa, supra,* the Court stated that the attorney's most important function at sentencing is to assure the preservation of his client's rights, such as the right to appeal and the right to withdraw a guilty plea. There is no such need for counsel at a forfeiture hearing.

Before parole is revoked the parolee is entitled to a hearing to determine whether he violated a condition of parole. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).[3] Since imprisonment invariably follows a revocation of parole, the revocation hearing involves not only a determination of guilt or innocence but the disposition as well. At a sentencing hearing the judge has a wide selection of dispositions, including fines, restitution, probation, and imprisonment. At a forfeiture hearing the disposition has already been determined, and the sole question for the parole board is the length of incarceration. This type of decision places the parole board in its traditional role: examining a prisoner's record, including his behavior, his attitude, his capacity for rehabilitation, and the nature of his original crime, to determine the length of his stay. The parole board does not make this determination in an adversary setting. No representative of the state presents a case against the prisoner, as in the sentencing hearing. Rather, the board engages in an informal interchange with the prisoners, as in parole release hearings.

I conclude, therefore, that defendants are entitled to judgment as a matter of law on plaintiff's claim that he was entitled to representation by counsel at his forfeiture hearing.

---

3. *Morrissey* was decided after this plaintiff's parole had been revoked. However, at the time of his revocation, plaintiff was entitled to a hearing under State ex rel. Johnson v. Cady, 50 Wis.2d 540, 185 N.W.2d 306 (1971).