PUTNAM, Respondent, v. McCAULEY, Individually and as Acting Administrator, Division of Corrections, Department of Health & Social Services, Appellant.*

*No. 507 (1974). Argued September 30, 1975.—Decided October 28, 1975.*
(Also reported in 234 N. W. 2d 75.)

* Motion for rehearing denied, without costs, on January 13, 1976.

For the appellant the cause was argued by *William A. Platz*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

For the respondent there was a brief and oral argument by *Howard B. Eisenberg*, state public defender.

For the appellant there was a brief by *Bronson C. La Follette*, attorney general, and *James H. Petersen*, assistant attorney general.

For the respondent there was a brief by *Howard B. Eisenberg*, state public defender.

HANLEY, J. Two issues are presented on this appeal:

1. Does sec. 53.11 (7) (b), Stats., violate the due process requirements of the constitution?

2. Does sec. 53.11 (7) (b), Stats., violate the equal protection requirements of the constitution?

*Due process violation.*

Sec. 53.11 (7), Stats., reads as follows:

"(a) An inmate or parolee having served the term for which he has been sentenced for a crime committed after May 27, 1951, less good time earned under this chapter and not forfeited as herein provided, shall be released on parole or continued on parole, subject to all provisions of law and department regulations relating to paroled prisoners, until the expiration of the maximum term for which he was sentenced without deduction of such good time, or until discharged from parole by the department, whichever is sooner.

"(b) Any person on parole under this subsection may be returned to prison as provided in s. 57.06 (3) or s. 57.07 (2) to serve the remainder of his sentence. He may earn good time on the balance of such sentence while so in prison, subject to forfeiture thereof for misconduct as herein provided. Subject to the approval of the department, he may again be released on parole thereafter under either this section or s. 57.06 or s. 57.07, whichever is applicable. *The remainder of his sentence shall be deemed to be the amount by which his original sentence was reduced by good time.*" (Emphasis supplied.)

Plaintiff's original mandatory release date was based on a calculation of the good time automatically given a prisoner credited on the length of time of his sentence at the beginning of his term, plus industrial good-time credits that he earned under sec. 53.12, Stats., while serving that term.

The trial judge in his memorandum decision held essentially that since the discretionary parolee, once his parole is revoked, is entitled to a hearing to determine how much, if any, of his good time will be revoked; sec. 53.11 (7) ( b), Stats., is unconstitutional as violative of the equal protection and due process clauses unless interpreted in such a way as to allow discretion in the department of corrections to determine how much, if any, good time should be forfeited. The trial court held that such determination is to be held at a due process type hearing.

It is important to note exactly what is happening where a parolee is in a situation of the type here under

consideration. Once a parolee reaches his mandatory release date, whether he is already on discretionary parole, or whether he is not released until that date, any time he spends on parole, *i.e.*, any "street time"— after that date is a period of custody added to the maximum of his original sentence, if revocation occurs. Plaintiff contends that this result is the type of "grievous loss" within the contemplation of this court and the United States Supreme Court when due process type hearings were mandated in other types of situations. Thus the narrow problem for consideration is whether the decisions involving due process rights recently afforded to probationers, parolees and prisoners should be extended to cover the precise set of circumstances involved herein.

Plaintiff properly points out that the due process rights of prisoners, parolees and probationers have been recognized as greatly extended in the years following the supreme court's decision in *Morrissey v. Brewer* (1972), 408 U. S. 471, 92 Sup. Ct. 2593, 33 L. Ed. 2d 484, which mandated a due process hearing to determine the validity of parole revocation. The seventh circuit, applying the rationale of *Morrissey,* extended the requirements of due process hearings, to various internal prison disciplinary proceedings, including revocation for serious misconduct of good-time credits earned, *United States ex rel. Miller v. Twomey* (7th Cir. 1973), 479 Fed. 2d 701. The supreme court set down general guidelines necessary to provide required due process at such hearings consistent with the institutional environment in *Wolff v. McDonnell* (1974), 418 U. S. 539, 94 Sup. Ct. 2963, 41 L. Ed. 2d 935. In light of these holdings, this court mandated analogous procedures for revocation of good time for prisoners in *Steele v. Gray* (1974), 64 Wis. 2d 422, 219 N. W. 2d 312, 223 N. W. 2d 614.

We think it is inherent in the holdings of *Morrissey, Wolff* and *Steele, supra,* that some due process rights should attach at the discretionary determination as to how much time will be added to the maximum period of

custody for the mandatory release parole violator. It would be appropriate to require at least those procedures presently available to the discretionary parole violator.

*Equal protection.*

According to sec. 53.11 (7) (b), as cited above,

"Any person on parole under this subsection may be returned to prison . . . to serve the remainder of his sentence."

Once it is decided that the parole should be revoked and the parolee be returned to prison: "The remainder of his sentence shall be deemed to be the amount by which his original sentence was reduced by good time."

Sec. 53.11 (2a), Stats., reads as follows:

"A parolee earns good time at the rate prescribed in this section. The department may forfeit all or part of the good time previously earned under this chapter, for violation of the conditions of parole, whether or not the parole is revoked for such misconduct."

Thus, it is apparent that the effect of revocation with respect to the issues involved here is significantly different for the discretionary parolee. First, there is no way that a discretionary parolee could have his absolute discharge date extended by a decision on this matter. Secondly, the department has discretion in the matter of whether or not to disallow good time credited to the discretionary parolee.

The present practice of the department as to the procedures involved in revoking the good time of a discretionary parolee have not been made a part of the record. Whether the determination as to how much, if any, good time will be subtracted is made at a hearing separate from that held on the issue of whether parole must be revoked is not known. However, both parties concede that in view of the *Steele* and *Wolff* decisions, *supra,* a due process determination must be made prior to the forfeiture of any good time for a discretionary parolee.

Therefore, some due process rights attach to the actual decision on forfeiture, apart from the decision on revocation, regardless of whether both decisions are made at the same hearing.

The trial judge, relying on *State ex rel. Farrell v. Stovall* (1973), 59 Wis. 2d 148, 159, 207 N. W. 2d 809, set forth the tests as whether the two separate procedures involved are properly comparable in the sense of dealing with the same group or class of persons and whether a rational basis exists to justify the distinction in rights afforded each class or group.

With respect to the first test, as the trial judge points out, the classification of discretionary versus mandatory release parole does not depend on the type of crime committed, except to the extent that the person who is sentenced to a longer term will receive more actual statutory good-time credit initially because of the way in which the computation is made. Any prisoner can eventually become either a discretionary or mandatory release parolee; some of the factors taken into consideration in granting discretionary parole presumably would have an effect on the mandatory release date, such as diligence in earning industrial good-time credits, which would result in hastening the mandatory release date of the discretionary parolee. It cannot successfully be contended that the two procedures deal with a different group or class of persons since, as the trial court notes, the only real difference is that the mandatory release parolees are relatively closer to their final discharge date.

Therefore, the elements required in the second test— whether basis exists to justify the distinction in rights afforded between persons in such class or group—must be reviewed. Defendant directs our attention to the recent decision in *Omernik v. State* (1974), 64 Wis. 2d 6, 18, 19, 218 N. W. 2d 734, wherein the elements of the second test were set forth as follows:

"A legislative classification is presumed to be valid. The burden of proof is upon the challenging party to establish the invalidity of a statutory classification. Any reasonable basis for the classification will validate the statute. Equal protection of the law is denied only where the legislature has made irrational or arbitrary classification. The tests to be applied in determining whether there has been a reasonable legislative classification in this state are fivefold: (1) All classification must be based upon substantial distinctions; (2) the classification must be germane to the purpose of the law; (3) the classification must not be based on existing circumstances only; (4) the law must apply equally to each member of the class; and (5) the characteristics of each class should be so far different from those of other classes as to reasonably suggest the propriety of substantially different legislation. The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification.

"Judicial response to a challenged legislative classification requires only that the reviewing court locate some reasonable basis for the classification made. The public policy involved is for the legislature, not the courts, to determine. . . ."

The determinative point is whether the legislature has recognized a public policy concern which reasonably justifies the differentiation in treatment resulting from the two classifications. Defendant contends that reasonable justification exists because it is necessary that a parolee on mandatory release who violates the parole be subject to serving his entire remaining sentence; otherwise, if he violated parole toward the end of a sentence, he would owe such a small amount of time, it would not pay to revoke him. This contention does not create a reasonable justification.

No rational basis exists to justify a distinction which permits one class of parolees to have various factors taken into consideration in determining the extension of the period of incarceration while allowing no such dis-

cretion for a second class, especially since the same prisoner released on discretionary parole is certain to become a mandatory release parolee at some time, as was the case herein. *See: State ex rel. Kovach v. Schubert* (1974), 64 Wis. 2d 612, 219 N. W. 2d 341. Such a determination would not mean that the mandatory release parolee would have no stake in good behavior up until the end of his custodial period. It would mean only that the particular facts and circumstances which lead the department to determine how much good time a discretionary parole violator would lose could be taken into consideration in a determination of how much of a remaining sentence must be served by the mandatory release parole violator. It could well be that in a particular set of circumstances, the department would determine that the mandatory release parole violator should be subject to service of his entire remaining sentence, regardless of what point in time the violation leading to revocation occurred. The determination respecting equal protection requirements goes only to the issue of discretion, not how that discretion should be exercised.

We conclude that the failure of sec. 53.11 (7) (b), Stats., to allow discretion on the part of the department to give credit for street time custody to mandatory release parole violators is violative of the equal protection clause of the fourteenth amendment. Discretion must be mandated and certain due process rights for revoked parole should attach at the time of the discretionary determination.

*By the Court.*—Judgment affirmed.