STATE EX REL. HAUSER, Petitioner, v. CARBALLO, SECRE-
TARY, Department of Health & Social Services, Re-
spondent. [Case No. 77–054.]
STATE EX REL. BROWN, Petitioner-Appellant, v. MA-
THEWS, Warden, Respondent. [Case No. 75–870.]
STATE EX REL. DRUMMER, Petitioner-Appellant, v. GAG-
NON, Respondent. [Case No. 76–317.]

*Nos. 77–054, 76–317. Submitted on briefs October 5, 1977.*
*No. 75–870. Argued October 3, 1977.—Decided*
*January 3, 1978.*
(Also reported in 261 N.W.2d 133.)

52

For the petitioner the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Melvin F. Greenberg,* assistant state public defender. [Case No. 77–054.]

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *James H. Petersen,* assistant attorney general. [Case No. 77–054.]

For the petitioner-appellant there were briefs and oral argument by *Howard B. Eisenberg,* state public defender. [Case No. 75–870.]

For the respondent the cause was argued by *James H. Petersen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general. [Case No. 75–870.]

For the appellant the cause was submitted on the briefs of *Elizabeth Alexander,* Correction Legal Services, Madison. [Case No. 76–317.]

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *James H. Petersen,* assistant attorney general. [Case No. 76–317.]

ABRAHAMSON, J. These cases have been consolidated for decision because they raise common questions concerning the procedures which must be followed by the Department of Health and Social Services (hereinafter Department) in determining whether to forfeit a parole violator's good time credits. The specific issues we are called upon to determine are:

1. Does this court's decision in *Putnam v. McCauley,* 70 Wis.2d 256, 234 N.W.2d 75 (1975) require that a mandatory release parole violator be given a due process hearing before forfeiture of any of his good time or before forfeiture of only that part of his good time successfully served on parole (*i.e.,* "street time")?

2. Does the policy under which the Department forfeits no part of the discretionary parole violator's good time contravene the requirements of sec. 53.11(2a), Stats.?

In order to place these issues into context, we shall define at the outset the statutory and administrative procedures which govern parole and good time credit in Wisconsin. We shall then summarize the facts of these cases and discuss the specific legal issues presented.

## I.

There are two categories of parole in Wisconsin, discretionary parole and mandatory release parole, governed respectively by secs. 57.06(1)(a)[1] and 53.11(7)

[1] Sec. 57.06(1)(a), Stats., provides, in pertinent part:

"(1)(a) The department may parole an inmate of the Wisconsin state prisons or any felon or any person serving at least one year or more in the Milwaukee county house of correction or a county reforestation camp organized under s. 56.07, when he or she has served one-half of the minimum term prescribed by

(a),[2] Stats. Under both categories, parole is viewed as an extension of the prison walls, and the parolee remains under the control and supervision of the Department until his entire sentence is completed.[3]

A *mandatory release parolee* is a prisoner released pursuant to sec. 53.11(7)(a) when he has served his sentence less good time granted and not forfeited under the provisions of ch. 53, described below. When a prisoner has served his sentence less his good time credit, he is entitled to release as a matter of right. The Department has no discretion to deny a sec. 53.11(7)(a) release.

An inmate who has forfeited all of his good time through institutional misbehavior[4] or who has elected,

statute for the offense, or when he or she has served 20 years of a life term, less the deduction earned for good conduct as provided in s. 53.11. . . ."

[2] Sec. 53.11(7)(a), Stats., provides that:

"An inmate or parolee having served the term for which he has been sentenced for a crime committed after May 27, 1951, less good time earned under this chapter and not forfeited as herein provided, shall be released on parole or continued on parole, subject to all provisions of law and department regulations relating to paroled prisoners, until the expiration of the maximum term for which he was sentenced without deduction of such good time, or until discharged from parole by the department, whichever is sooner."

[3] Secs. 57.06(3), 53.11(7)(a), Stats.; *Wisconsin Criminal Procedure, Probation and Parole*, 1966 Wis. L. Rev. 520, 526. *See also* Note, *Parole Revocation in the Federal System*, 56 Geo. L.J. 705, 732 (1968).

[4] Sec. 53.11(2), Stats. provides for the forfeiture of good time credits by an inmate:

"Any inmate who violates any regulation of the prison or refuses or neglects to perform the duties required of him shall be subject to forfeiture of any good time previously granted or earned under this chapter, 5 days for the first offense, 10 days for the second offense and 20 days for the third or each subsequent offense. Good time so forfeited shall not be restored. In addition, the department, or the warden or the superintendent, with the approval of the department, may cancel all or part of such good time."

pursuant to sec. 53.11(4), Stats.[5] to waive his good time (usually because he is unwilling to submit to supervision and face the risk of loss involved in the revocation of mandatory release parole[6]) will remain in the institution until his final discharge date (the date the sentence pronounced by the trial court terminates[7]).

As has been noted, a prisoner's right to mandatory release is dependent upon his good time credits. Good time credit is described in secs. 53.11(1), 53.11(2a) and 53.12(1), Stats. Inmates and parolees who "conduct [themselves] in a proper manner" are "entitled to good time or diminution of sentence" at the rate of one month the first year, two months the second year, and so on, up to six months for the sixth and all following years. Sections 53.11(1)[8] and 53.11(2a),[9] Stats. These credits are variously referred to as "regular," "state" or "stat-

Under this court's decision in *Steele v. Gray,* 64 Wis.2d 422, 219 N.W.2d 312 (1974), an inmate is entitled to a due process hearing before his good time credits can be forfeited under sec. 53.11(2).

[5] Sec. 53.11(4), Stats. provides: "An inmate may waive his good time."

[6] Manual, *Legal Assistance to Inmates and Mental Patients,* sec. 2.04(3) (Univ. of Wis. Law School 1974).

[7] The final discharge date is upon completion of the entire sentence as pronounced by the court. The Department may choose to terminate control sooner than the final discharge date and give the successful parolee an absolute discharge at any time after his mandatory release date. Sec. 53.11(7)(a), Stats.

[8] "53.11 Credit for good conduct; forfeiture for bad; parole. (1) The warden or superintendent shall keep a record of the conduct of each inmate, specifying each infraction of the rules. Each inmate who shall conduct himself in a proper manner and perform all the duties required of him shall be entitled to good time or diminution of sentence according to the following table, prorated for any part of a year: First year, one month; second year, 2 months; third year, 3 months; fourth year, 4 months; fifth year, 5 months; every year thereafter, 6 months."

[9] "A parolee earns good time at the rate prescribed in this section." Sec. 53.11(2a), Stats.

utory" good time. Inmates, in addition, are "entitled to a diminution of time at the rate of one day for each six days" during which they show "diligence" in work or study. Sec. 53.12(1), Stats.[10] These credits are commonly referred to as "industrial" good time. Pursuant to these statutory entitlements, the Department assigns each entering prisoner a projected mandatory release date, calculated by subtracting from the maximum term to which the prisoner was sentenced the entire credit under secs. 53.11(1) and 53.12(1), Stats. for which he is eligible. Since the projected mandatory release date assumes that all "state" and "industrial" good time is earned, the mandatory release date must be recalculated when "state" good time is forfeited or "industrial" good time is disapproved.[11] Recalculation is also necessary when a prisoner is released on discretionary parole, to reflect the fact that he earns only "statutory" good time, not "industrial" good time, on parole.[12]

A *discretionary parolee* is a prisoner released pursuant to sec. 57.06(1)(a), Stats. as a result of an exercise of discretion by the Department. Because the legislature has established no statutory exclusions on parole eligibility, the Department may grant discretionary parole to any prisoner at any time following the minimum incarceration prescribed in sec. 57.06(1)(a), Stats. The discretionary parolee who reaches his man-

---

[10] "53.12 Credit for diligence; earnings; reward of merit. (1) In addition to the credit for good conduct prescribed in section 53.11, every inmate whose diligence in labor or study surpasses the general average is entitled to a diminution of time at the rate of one day for each 6 days during which he shows such diligence. The diminution shall be made under the rules of the department. . . ."

[11] Manual, *Legal Assistance to Inmates and Mental Patients*, sec. 2.04 (Univ. of Wis. Law School 1974).

[12] *State ex rel. Drummer v. Gagnon*, Case No. 76–317, Letter from D. A. Strege, Registrar, Wisconsin State Prisons, Record, page 8.

datory release date while on discretionary parole (and who is thereby entitled to parole as of right) is deemed from that point forward a mandatory release parolee. Sec. 53.11 (7) (a), Stats. This automatic change in parole status has led this court to note that the only real difference between the discretionary parolee and the mandatory release parolee is that the mandatory release parolee is relatively closer to his final discharge date. *Putnam v. McCauley,* 70 Wis.2d 245, 262, 234 N.W.2d 75 (1975).

If discretionary and mandatory release parolees do not violate the conditions of their parole, they will be entitled to absolute final discharge when their sentences terminate. In other words, their parole time will be credited against their sentences in the same manner as would time served within the institution.

If the Department finds that a discretionary or a mandatory release parolee has violated a condition of his parole, it has the authority under sections 57.06 (3) and 53.11 (7) (b) to revoke parole and return the parole violator to prison. Under secs. 53.11 (2a) and 53.11 (7) (b), respectively, the Department has the authority to deprive the discretionary parole violator and the mandatory release parole violator of some or all of his good time credits. The statutory and administrative procedures which govern the forfeiture of good time credits after the revocation of discretionary and mandatory release parole are at issue in these cases and will be discussed below.[13] For the present we shall note only the disparate effects of good time forfeiture upon discretionary and mandatory release parole violators.

Because the mandatory release parole violator was released on parole when he had *only* good time left to

---

[13] In what is probably an understatement, the computation of good time credits and the administration of secs. 53.11 (7) (a) and (7) (b) have been characterized as "complex." *Rice v. Schmidt,* 277 F. Supp. 811, 814 (E.D. Wis. 1967).

serve, he cannot be returned to prison unless the Department can "take back" some or all of that good time. The period of time the mandatory release parole violator can be required to serve in prison following the revocation of his parole is therefore directly dependent upon the number of his good time credits which can be forfeited. If all or a sufficiently large portion of his good time credits are forfeited, the mandatory release parole violator can be, in effect, denied sentence credit for the portion of his good time successfully served on parole and thus required to serve beyond the final discharge date originally pronounced by the court.

The mandatory release parole violator's good time has been colloquially divided into two parts: (1) that part of good time successfully served on parole ("street time"); and (2) that part of good time not yet served on parole ("non-street time"). The phrase "good time" will be used in this opinion to refer to both types of good time, namely "street time" and "non-street time." The discretionary parolee's good time cannot be divided into "street time" and "non-street time." The discretionary parolee is serving "prison time" on parole, not good time, for once he has only good time left to serve, he becomes a mandatory release parolee. The discretionary parole violator (unlike the mandatory release parole violator) receives automatic sentence credit for the time he has successfully served on parole;[14] the discretionary parole violator thus cannot be required to serve beyond the period of sentence originally pronounced by the court. Good time forfeiture will nonetheless affect the period of time the discretionary parole violator must serve within the institution, for to the extent that the Department punishes him for parole

[14] We shall discuss the Department's treatment of time successfully served on parole by the discretionary parole violator in Part V, *infra*, in connection with petitioner Drummer's contentions.

violation by forfeiting his good time credits, the violator's mandatory release parole date will be postponed.

## II.

In 1971 and 1972, Monroe Lake Hauser, Jr. was sentenced to four concurrent terms for burglary and a further consecutive term for escape. Pursuant to that sentencing structure, he was assigned a maximum discharge date of April 10, 1977 and a mandatory release parole date of May 23, 1975. Following his release on mandatory release parole, Hauser's parole was revoked and he was returned to prison. On September 23, 1976 Hauser was granted a hearing in which the Department decided to forfeit four months, twenty-two days of his "street time." The Department forfeited, without hearing, Hauser's "non-street time." Hauser has filed an original action in this court, asking that we issue a writ of mandamus requiring the Secretary of the Department to reinstate the "non-street time" credits which were forfeited by the Department without the hearing required by the *Putnam case*. It appears that Hauser has reached his final discharge date on the convictions and sentences in issue.

Carlos B. Brown, Jr. was convicted of various offenses in the circuit court for Milwaukee County in 1970 and 1972. He was sentenced to prison and assigned a maximum discharge date of January 23, 1976 and a mandatory release parole date of December 27, 1974. Three months thirteen days after the inception of his mandatory release parole, Brown absconded. Following the revocation of Brown's parole, the Department reviewed the evidence presented at the parole revocation hearing and decided to credit against the balance of Brown's sentence his entire period of "street time." The Department forfeited without hearing, however, Brown's

"non-street time." Brown instituted a habeas corpus action in the circuit court, seeking reinstitution of parole and claiming that he had been denied the hearing required by *Putnam* before forfeiture of "non-street time." Brown also claims that in view of the parties' stipulation that the Department, as a matter of policy, forfeits no part of the discretionary parole violator's good time, it cannot forfeit any part of his good time. Subsequent to his appeal from the circuit court's order dismissing his petition, Brown was granted final discharge from the custody and supervision of the Department.

Nathaniel S. Drummer, Jr. was convicted of burglary on December 29, 1969. Subsequent to the revocation of his discretionary parole, he was placed on mandatory release parole on June 25, 1974. He absconded one year, seven days after the date of his mandatory release. A revocation hearing held November 12, 1975 resulted in the revocation of Drummer's mandatory release parole. On April 22, 1976, the Department notified Drummer that it would grant his request for a *"Putnam"* hearing on the question of crediting against the balance of his sentence his "street time." The Department's decision, entered June 4, 1976, ordered forfeiture of nine months, seven days of the total one year, seven days of Drummer's "street time." Drummer then petitioned the circuit court for release on habeas corpus. Although his petition does not contest the Department's determination that the *Putnam* hearing requirement applies only to "street time," it does challenge the policy under which the Department has decided to give automatic credit to discretionary parole violators for time successfully served on parole, while retaining the option—after hearing—to forfeit all or some part of mandatory release parole violators' "street time" credit. Drummer claims that the Department must credit him with all

of his "street time" and, in the alternative, that the Department's failure to accord him a prompt "street time" hearing deprived him of due process. He appeals from the circuit court's order denying relief and dismissing his petition. Since the filing of the appeal, Drummer has been granted final discharge from the custody and supervision of the Department.

Because of the continued significance of the questions presented by these cases, we have decided to consider the merits of the claims notwithstanding the fact that as to the parole violators before this court, the matters appear to be moot.[15] We shall refer to Hauser, Brown and Drummer as the petitioners.

## III.

We shall consider first the contention of petitioners Hauser and Brown that a mandatory release parole violator must be treated in the same manner as a discretionary parole violator, *i.e.*, that the Department must exercise discretion as to how much good time is to be forfeited and the violator must be accorded a hearing before his good time can be forfeited. We agree with the petitioners' contention.

Resolution of this issue turns upon the interpretation of sec. 53.11 (7) (b), Stats. in the *Putnam case*. *Putnam* was a declaratory judgment action contesting the constitutionality of sec. 53.11 (7) (b), which governs the return of a parole violator after the revocation of mandatory release parole. The section provides as follows:

Section 53.11 (7) (b) : "Any person on parole under this subsection may be returned to prison as provided in s. 57.06 (3) or s. 57.07 (2) to serve the remainder of

[15] *Mueller v. Jensen*, 63 Wis.2d 362, 367, 217 N.W.2d 277 (1974); *State v. Seymour*, 24 Wis.2d 258, 261, 128 N.W.2d 680 (1964).

his sentence. He may earn good time on the balance of such sentence while so in prison, subject to forfeiture thereof for misconduct as herein provided. Subject to the approval of the department, he may again be released on parole thereafter under either this section or s. 57.06 or s. 57.07, whichever is applicable. The remainder of his sentence shall be deemed to be the amount by which his original sentence was reduced by good time."

Under the Department's pre-*Putnam* interpretation of sec. 53.11(7)(b), the violator was required to return to prison to serve a period equal to his good time credits at the time he first attained mandatory release status, regardless of the duration of the period he had successfully served on parole, and regardless of the nature of the offense which triggered parole revocation. Since the mandatory release parole violator had already spent a portion of his good time "on the street," his return to prison to serve all of his good time necessarily extended his final discharge date.

In contrast, a discretionary parolee on revocation of parole and return to prison was subject not to an automatic sanction, but to the Department's exercise of discretion as to whether any part of his good time should be forfeited. The Department relied on sec. 53.11 (2a), Stats. which provides:

"A parolee earns good time at the rate prescribed in this section. *The department may forfeit all or part of the good time previously earned under this chapter,* for violation of the conditions of parole, whether or not the parole is revoked for such misconduct." (Emphasis added.)

Noting the disparate treatment accorded mandatory release and discretionary parole violators by this interpretation of the provisions of secs. 53.11(7)(b) and 53.11(2a), this court stated in *Putnam:*

"No rational basis exists to justify a distinction which permits one class of parolees to have various factors taken into consideration in determining the extension of the period of incarceration while allowing no such discretion for a second class, especially since the same prisoner released on discretionary parole is certain to become a mandatory release parolee at some time, as was the case herein." 70 Wis.2d at 263, 264.

The petitioners in these cases maintain that *Putnam,* viewed in its entirety, requires the Department to precede forfeiture of the mandatory release parole violator's good time credits with an exercise of discretion and a due process hearing, just as it exercises discretion in the forfeiture of the discretionary parole violator's good time and provides a due process hearing.

The Department, on the other hand, contends that *Putnam* requires only that a discretionary determination precede the extension of a mandatory release parole violator's final discharge date. Accordingly, the Department now interprets sec. 53.11(7)(b) to require (1) that "non-street time" be automatically forfeited, and (2) that "street time" be forfeited only after a hearing, since the forfeiture of "street time" can extend the final discharge date. The Department contends that *Putnam* cannot be read to require that forfeiture of the mandatory release parole violator's "non-street time" be preceded with the same discretionary determination that precedes forfeiture of the discretionary parole violator's good time because there is no similarity between the two forfeiture procedures. It supports this position by explaining that forfeiture of "good time" is involved in sec. 53.11(2a) relating to discretionary parolees, but that it is not in issue in sec. 53.11(7)(b), Stats., relating to mandatory release parolees.

A careful reading of sec. 53.11(7)(b) demonstrates that the section does not refer, in terms, to the "forfeiture" of good time; it merely remands the prisoner

to serve a period equal to his previously granted good time credits.

The Department takes the position that sec. 53.11(7) (b) does not refer to the forfeiture of good time for the simple reason that the mandatory release parolee has no good time credits to forfeit. In the Department's view, good time credits function only to establish the mandatory release parole date and are *functus officio* once that date is achieved.

The Department argues as follows:

"[The Department] continues to be amazed by the [petitioner's] claim that good time credits were forfeited. Since good time credits only have relationship to determining a mandatory release parole date, and since by definition a mandatory release parolee has reached that mandatory release parole date, what would these good time credits allegedly forfeited be used for? [The Department] asserts that once good time credits are used to achieve mandatory release parole status, the credits are no longer usable." *State ex rel. Brown v. Mathews,* Res. Brief at 9, n. 5.

By reading the concept of good time out of sec. 53.11 (7) (b), the Department is able to argue that the protections accorded by *Putnam* encompass only extension of the maximum discharge date; and by thus limiting *Putnam,* the Department finds no impediment to its contention that sec. 53.11(7) (b) requires that the part of good time not yet served on parole must be served in prison until the Department exercises its discretion to rerelease the violator.

There is a theoretical nicety to the Department's contention that good time is of only computational import and that once it has been used to establish the mandatory release parole date, it ceases to exist. The appeal of that theory is likely, however, to elude the prisoner, who understandably views good time not as

an arithmetic tool, but as the embodiment of his right to release on parole.

The prisoner is intensely concerned with parole. " '[P]arole has far more importance than the other aspects of an institutional operation—the food, the clothing, the medical care. . . . [P]arole is the overwhelming consideration for every prisoner.' "[16] "Prisoners are jealous of their good time earnings and feel that a considerable injustice is done when, once earned, such time is taken away. . . ."[17]

The prisoner is acutely aware he is "entitled to good time or diminution of sentence" for parole purposes. Secs. 53.11(1) and 53.12(1), Stats. The prisoner is also aware that good time may be forfeited for misconduct. Sec. 53.11(2a) and sec. 53.11(7)(b). To the prisoner, the ultimate significance of forfeiture under sec. 53.11 (2a), relating to discretionary parole violation, does not differ from the ultimate significance of forfeiture under sec. 53.11(7)(b), relating to mandatory release parole violation: under both sections, misconduct creates the possibility of withdrawal of a previously granted reduction in the term of institutional confinement.

The Department correctly notes that under Wisconsin's statutory parole scheme, good time credits provide the means for computing a prisoner's mandatory release parole date. But to consider that computation a mere exercise in arithmetic, the significance of which disappears on the mandatory release date; to view good time as a thing apart from the conditional liberty it signifies, is to ignore the generally accepted view of the nature of good time. Good time is time (measured by

[16] Note, *Procedural Due Process in Parole Release Proceedings—Existing Rules, Recent Court Decisions, and Experience in the Prison*, 60 Minn. L. Rev. 341, 353, n. 58 (1976).

[17] Model Penal Code, Tent. D. No. 5, Comment to sec. 305.9 at 83 (1956).

days) that the prisoner is entitled to spend on conditional liberty outside the institution. The prisoner has accumulated a fixed number of good time days. These days do not shed their characterization as good time merely because they are being served on parole.

The Department's distinction is too thin to stand close analysis. Whether the issue be forfeiture of inmates' good time, forfeiture of discretionary parole violators' good time, or determination of the period of incarceration after mandatory release parole violation, the stake is the same: how much time is to be spent incarcerated and how much conditionally free.[18] Judge Gergen aptly observed that "whatever the play on words," sec. 53.11 (7) (b) triggers the loss of previously earned good time.

Petitioners correctly contend that in *Putnam* we considered sec. 53.11(7) (b) to involve the issue of forfeiture of good time. In light of that determination, we construed sec. 53.11(7) (b) to require that the Department exercise its discretion before forfeiting the mandatory release parole violator's good time. Sec. 53.11(7) (b) has thus been interpreted to include the language of sec. 53.11(2a): "The department may forfeit all or part of the good time previously earned under this chapter, for violation of the conditions of parole. . . ." The following language from *Putnam* explains this court's reasoning:

"The determinative point is whether the legislature has recognized a public policy concern which reasonably justifies the differentiation in treatment resulting from the two classifications [discretionary parole violators

[18] "And whatever the mathematics there is a human difference between losing what one has and not getting what one wants. This point is convincingly developed in the context of revocation as distinguished from denial of parole, in Chief Justice Burger's opinion in *Morrissey v. Brewer.*" Friendly, *Some Kind of Hearing,* 123 U. of Pa. L. Rev. 1267, 1296 (1975).

and mandatory release parole violators]. [The State] contends that reasonable justification exists because it is necessary that a parolee on mandatory release who violates the parole be subject to serving his entire remaining sentence; otherwise, if he violated parole toward the end of a sentence, he would owe such a small amount of time, it would not pay to revoke him. This contention does not create a reasonable justification.

"No rational basis exists to justify a distinction which permits one class of parolees to have various factors taken into consideration in determining the extension of the period of incarceration while allowing no such discretion for a second class, especially since the same prisoner released on discretionary parole is certain to become a mandatory release parolee at some time, as was the case herein. *See: State ex rel. Kovach v. Schubert* (1974), 64 Wis.2d 612, 219 N.W.2d 341. Such a determination would not mean that the mandatory release parolee would have no stake in good behavior up until the end of his custodial period. It would mean only that the particular facts and circumstances which lead the department to determine how much good time a discretionary parole violator would lose could be taken into consideration in a determination of how much of a remaining sentence must be served by the mandatory release parole violator. It could well be that in a particular set of circumstances, the department would determine that the mandatory release parole violator should be subject to service of his entire remaining sentence, regardless of what point in time the violation leading to revocation occurred. The determination respecting equal protection requirements goes only to the issue of discretion, not how that discretion should be exercised." *Putnam v. McCauley,* 70 Wis.2d at 263, 264.

We recognize the genesis of the Department's post-*Putnam* interpretation of sec. 53.11 (7) (b). Our opinion referred to both "street time" and "good time" without defining these terms, and it sometimes appeared to use the terms interchangeably. Indeed, it appears that the term "street time" was first used in the *Putnam* decision. However, neither before nor after *Putnam* does

the term "street time" appear in an opinion[19] or in any of the statutes[20] which govern Wisconsin's parole scheme. Moreover, as Judge Gergen correctly noted, the *Putnam* opinion shows the court's concern with both the extension of the sentence beyond its original termination date (forfeiture of street time) and the amount of time to be served in institutional confinement (forfeiture of non-street time).

We have reviewed the history and purpose of secs. 53.11(2a) and (7)(b) and conclude that there is no valid basis in sec. 53.11(7)(b), Stats. to support a division of good time into "street time" and "non-street time" or to support a holding requiring the exercise of discretion preceding the forfeiture of one aspect of good time but not the other.[21] *Putnam* must be read to

---

[19] *See State ex rel. Renner v. H. & S.S. Dept.*, 71 Wis.2d 112, 237 N.W.2d 699 (1976), in which we stated:

"In this case, consistent with department practice prior to *Putnam, supra*, the appellant's good time credits were automatically revoked upon revocation of his [mandatory release] parole. *Putnam* requires that the department exercise its discretion in determining how much *good time* must be forfeited. The number of *good time* credits affects the computation of a prisoner's ultimate discharge date." 71 Wis.2d at 117 (emphasis added).

[20] For a post-*Putnam* law making reference only to good-time, *see* ch. 29, sec. 662, Laws of 1977.

[21] *See* Bill Drafting Notes to ch. 256, Laws of 1951 and to ch. 71, Laws of 1955.

In 1976 the Federal law was changed to provide for a credit toward sentence for time successfully served on parole. 18 U.S.C. 4210(b). Pub. L. 94–233, 1976 U.S. Code and Cong. News 335; House Conf. Rept. No. 94–838, 1976 Code and Cong. News 351, 364; *Daniels v. Farkas*, 417 F. Supp. 793 (D.C. Cal. 1976); *Weatherington v. Moore*, 431 F. Supp. 515 (W.D. Tenn. 1977).

"Time spent under parole supervision until the date of the violation for which parole is revoked should be credited against the sentence imposed by the court." Nat'l Advisory Comm'n on *Criminal Justice Standards and Goals, Corrections*, (1973), p. 588.

require that the Department exercise discretion in revoking the mandatory release parole violator's good time, just as it exercises discretion in revoking the discretionary parole violator's good time. *Putnam* recognizes that the consequences of the exercise of discretion may be different for the two types of parolees. The discretionary parolee may lose no good time but still may have to serve prison time; but unless a portion of a mandatory release parolee's good time is forfeited, he need not serve any time in prison upon revocation of parole.

To the extent that petitioners' "street time" was forfeited after a hearing and the exercise of discretion, the Department complied with the requirements of *Putnam*. The Department did not comply with *Putnam* when it failed to hold a hearing and to exercise its discretion in determining whether to forfeit all of or merely part of the petitioners' "non-street time."

■

It appears that the petitioners before this court cannot benefit from an exercise of discretion as to the forfeiture of their non-street time. However, we conclude that the Department must hold a hearing and exercise its discretion as to the loss of non-street time for each mandatory release parolee whose parole was revoked subsequent to our decision in *Putnam* for whom the issue is not moot.[22]

---

The A.L.I.'s Model Penal Code takes a different approach from the State or Federal system. It establishes a term of imprisonment and a separate term of parole. If parole is revoked, a parolee is recommitted for the remainder of the maximum parole term less "street time." Good time credits earned during the parole may be forfeited. The offender is not required to serve again in prison any time he has served on parole. Model Penal Code, Tent. D. No. 5, sec. 6.09 A and sec. 305.22 (1956).

[22] In *State ex rel. Renner v. H. & S.S. Dept.*, 71 Wis.2d at 117, we held that *Putnam* was not to be applied retroactively.

## IV.

Petitioners Brown and Drummer challenge on equal protection grounds the Department's administrative determination never to forfeit the good time of discretionary parole violators. The Department stipulates that this is its policy,[23] arguing, in effect, that regardless of the proximity of his mandatory release date, each discretionary parole violator should be given full good time credit, and regardless of the time before his final discharge date, each mandatory release parole violator should forfeit all non-street time. The Department defends its across-the-board exercise of discretion as follows:

"The determination of the Department as to discretionary parole violators, in this case reflected as an across-the-board exercise of discretion not to forfeit credit for good conduct, reflects a determination that the Department's hopes for ultimate rehabilitation of an offender are best furthered and least frustrated by not forfeiting any credit for good conduct. This is within the Department's prerogative. It is the Department's belief that revocation resulting in incarceration, no matter the time remaining until mandatory release parole, provides an object lesson that promotes a desire to achieve a successful mandatory release parole. Such belief reflects a legitimate decision by the Department in attempting the 'sensitive and difficult effort to encourage for . . . prisoners constructive future citizenship while avoiding the danger of releasing them prematurely upon society.' *McGinnis v. Royster* (1973), 410 U.S. 263, 269–270, 93 S. Ct. 1055, 1059, 35 L. Ed.2d 282, 288. No matter how rough, illogical, or unscientific, as long as 'the challenged distinction rationally furthers some legitimate, articulated state purpose,' it is permis-

[23] Prior to August 1, 1972, it appears that the Department was forfeiting good time credits of a discretionary parolee upon parole revocation. *See Sillman v. Schmidt*, 394 F. Supp. 1370, 1372 (W.D. Wis. 1975) and *Sanchez v. Schmidt*, 352 F. Supp. 628, 631, 632 (W.D. Wis. 1973).

sible. *Id.*, 410 U.S. at 270, 93 S. Ct. at 1059, 35 L. Ed.2d at 289; *Metropolis Theatre Co. v. City of Chicago* (1913), 228 U.S. 61, 33 S. Ct. 441, 57 L. Ed. 730.[8]

The policy under which the Department automatically credits all of the discretionary parole violator's good time was not before this court in *Putnam,* 70 Wis.2d at 261. Indeed, we noted in *Putnam* that by virtue of sec. 53.11(2a), the Department "has discretion in the matter of whether or not to disallow good time credited to the discretionary parolee," but that "[t]he present practice of the department as to the procedures involved in revoking the good time of a discretionary parolee have not been made a part of the record." 70 Wis.2d at 261.[24]

[8] The observation that '[t]he Department concedes [no forfeiture of credit for good conduct as to discretionary parolees] . . . to be a harsh result[,]' Brief of Appellant, p. 12, is but one example of the effect achieved at the extremes of the policy. But harshness of result is not the determinative consideration. Rather, it is determinative that the Department, charged as it is to attempt rehabilitative correctional services, has made a policy determination within the scope of its jurisdiction."

[24] Professor Donald Newman commented as follows about the difficulty of court review of parole issues:

"In appellate review of parole issues it is important for the agency practices to be set in appropriate context. Many appellate courts have only a vague and distant awareness of parole with little access to over-all information about the parole authority to give them the context of the particular case before them. It would seem helpful to both agency and court if paroling authorities could collect data and otherwise describe their entire operation including objectives, policies, and common procedures, for presentation to the court along with facts relevant to any single case. As the police have discovered, cases decided out of context with administrative reality often work hardships on them which might well have been prevented had the court received a better picture of the issue in context. If such information is not developed by the parole agency, it will not be developed at all." Newman, *Court Intervention in the Parole Process,* 36 Alb. L. Rev. 257, 304 (1972).

We now reject the Department's contention that it is permissible under sec. 53.11(2a), Stats., to institute an administrative policy which automatically credits the discretionary parole violator with all of his good time credit. We hold that to accord automatic good time credit to all discretionary parole violators is to contravene the legislative intent of sec. 53.11(2a), Stats., which provides as follows:

"A parolee earns good time at the rate prescribed in this section. The department may forfeit all or part of the good time previously earned under this chapter, for violation of the conditions of parole, whether or not the parole is revo_ed for such misconduct."

Had the legislature intended the Department to accord automatic credit to all discretionary parolees for all good time, it would have said so. Instead, the legislature prescribed that the Department make individualized good time forfeiture determinations. That description embodies the underlying concept of sentencing, parole and probation in our criminal justice system: the "individualization of justice." *State v. Garner*, 54 Wis.2d 100, 106, 194 N.W.2d 649 (1972).

Section 53.11(2a), like sec. 53.11(7)(b), requires the exercise of discretion. It is the Department's failure to undertake that exercise that we disapprove. As we have pointed out in the context of judicial sentencing, "[d]iscretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning." *McCleary v. State*, 49 Wis.2d 263, 277, 182 N.W.2d 512 (1971). There must be evidence that the Department acted with full knowledge of the facts, on a basis consistent with the purposes of parole and consistent with the applicable law. *State ex rel. Plotkin v. H & SS Dept.*, 63 Wis.2d 535, 542, 545, 217 N.W.2d 641 (1974).

Both secs. 53.11(2a) and 53.11(7)(b), Stats. call for the Department's exercise of discretion as to the forfeiture of good time. In the exercise of this discretion the Department should be guided by the test held applicable to hearings in which the issue is inmates' loss of good time for institutional misconduct: "[I]n the exercise of proper discretion is it in the best interests of the [violator], of the penal system, and of society to effect a revocation of good time." *Steele v. Gray,* 64 Wis.2d 422, 429, 219 N.W.2d 312, 223 N.W.2d 614 (1974).[25] This determination requires application of

---

[25] The first part of the test is "Did the prisoner [here parolee] conduct himself in such a way as to invoke the department's authority to revoke . . . ." *Steele v. Gray,* 64 Wis.2d 422 at 428–429. This conduct sufficient to invoke parole revocation is sufficient to invoke the Department's authority to revoke good time. Sec. 53.11(2a), Stats., permits the Department to forfeit good time for violation of conditions of parole whether or not the parole is revoked for such misconduct.

A similar test was applied by this court to revocation of probation. *State ex rel. Plotkin v. H & SS Dept.,* 63 Wis.2d 535, 544, 217 N.W.2d 641 (1974).

In *Putnam* both parties conceded that "a due process determination must be made prior to the forfeiture of any good time for a discretionary parolee." 70 Wis.2d at 261. The court then went on to decree the same type of hearing for revocation of good time of mandatory release parolees as given to discretionary parolees, saying (70 Wis.2d at 261, 262):

"The present practice of the department as to the procedures involved in revoking the good time of a discretionary parolee have not been made a part of the record. Whether the determination as to how much, if any, good time will be subtracted is made at a hearing separate from that held on the issue of whether parole must be revoked is not known. However, both parties concede that in view of the *Steele* [*Steele v. Gray,* 64 Wis.2d 422, 219 N.W.2d 312, 223 N.W.2d 614 (1974)] and *Wolff* [*Wolff v. McDonnell,* 418 U.S. 539 (1974)] decisions, *supra,* a due process determination must be made prior to the forfeiture of any good time for a discretionary parolee. Therefore, some due process rights attach to the actual decision on forfeiture, apart from the decision on revocation, regardless of whether both decisions are made at the same hearing."

the Department's expertise in predicting, on the basis of the facts and circumstances of each particular case, what balance of time between renewed incarceration and further parole supervision is most likely to protect society and at the same time to facilitate the violator's transition between prison and unconditional freedom. The Department might look at such factors as the prisoner's record, his attitude, his capacity for rehabilitation, the nature of his original crime, the nature of the violator's behavior while on parole, the nature of the violation of the conditions of parole, the rehabilitative aims to be accomplished by imprisonment or parole for the time periods in question, the need for forfeiture of good time to emphasize the seriousness of the violation of the condition of parole, and the time left before the mandatory release parole violator's final discharge or the discretionary parole violator's mandatory release parole date. The precise bounds of the period of recommitment or continuation of parole supervision must depend upon the facts and circumstances of each case.[26]

Discretionary parole violators have been allowed to retain their good time. No individual rights have been violated. Any attempt to turn the clock back and determine whether good time should be forfeited for each individual violator would be unfair to the individuals involved and might cause administrative hardship. Therefore, our holding that the Department must conduct an individual good time forfeiture determination for each discretionary parole violator applies only to parole revocations occurring after the date of this man-

[26] *Cf. Sanchez v. Schmidt,* 352 F. Supp. 628, 632 (W.D. Wis. 1973); *Monsour v. Gray,* 375 F. Supp. 786, 789 (E.D. Wis. 1973); *State ex rel. Plotkin v. H & SS Dept.,* 63 Wis.2d 535, 543, 544, 545, 217 N.W.2d 641 (1974); A.B.A., *Standards Relating to Probation* 5.1; *Morrissey v. Brewer,* 408 U.S. 471, 480 (1972); Project, *Parole Release Decision Making and The Sentencing Process,* 84 Yale L.J. 810 (1975).

date. *Cf. State ex rel. Johnson v. Cady*, 50 Wis.2d 540, 556, 185 N.W.2d 306 (1971).

## V.

We turn now to a consideration of petitioner Drummer's claims. He first challenges as violative of equal protection the fact that the mandatory release parole violator may lose sentence credit for successfully served parole time, while the discretionary parole violator is assured of receiving sentence credit for successfully served parole time.[27] Time spent on parole by a discretionary parolee (hereinafter referred to as "parole time") has nothing to do with good time; this "parole time" is in lieu of prison time without reference to good time. Time spent on parole by a mandatory release parolee (which is referred to as "street time" in this opinion) is time served out of prison as a matter of right (*i.e.*, good time, sec. 53.11(7)(a)), but subject to withdrawal on parole revocation under sec. 53.11 (7)(b).

To summarize, the discretionary parolee is serving "prison time" while on parole; the mandatory release parolee is serving his "good time credits" while on parole. Because the Department may revoke the mandatory release parole violator's good time credits pursuant to sec. 53.11(7)(b), it can, in effect, deny him sentence credit for his successfully served parole time. However, neither the Department nor the petitioners cite any statutory authority pursuant to which the Department can either directly or indirectly deprive the discretionary parole violator of sentence credit for his successfully served parole time.[28]

---

[27] *See* text at note 14, *supra*.

[28] Sec. 53.11 is silent as to the treatment of time successfully completed on parole. Sec. 53.11(5), Stats., provides that the time during which an inmate who escapes is at large shall not be

In *Putnam* we held that for purposes of good time forfeiture the two types of parolees must be treated similarly. Drummer is not raising a "good time" issue because, as we have noted, the discretionary parole violator is not serving good time on parole. Accordingly Drummer cannot rely on the "good time" aspect of *Putnam* to support his contention.

Drummer claims, citing *Putnam* again, that he is being denied equal protection of the law because there is no rational ground on which to base any distinction in treatment between the two types of parolees. We disagree, and for the reasons stated below, we hold that the legislature and Department can distinguish between discretionary and mandatory release parolees for purposes of crediting "parole time" and "street time" as service of sentence.

The legislature has created a system of discretionary parole to identify prisoners who appear most amenable to rehabilitation and who at the same time pose the least threat to the public.[29] The discretionary parolee has thus been selected with these factors in mind. Parole is obviously better than incarceration, but it is fettered freedom. Sec. 57.06, Stats.

computed as time served. *See also* sec. 973.15, Stats. Sec. 57.072, Stats. provides that the period of probation or parole ceases running upon the offender's absconding or committing a crime or some other violation of the terms of probation or parole warranting revocation. *Cf. Guyton v. State,* 69 Wis.2d 663, 230 N.W.2d 726 (1975).

[29] *Morrissey v. Brewer,* 408 U.S. 471, 477, 478 (1972); Comment, *Freedom and Rehabilitation in Parole Revocation Hearings,* 72 Yale L.J. 368, 370 (1962); Comment, *The Parole System,* 20 U. of Pa. L. Rev. 282, 298 (1971).

Parole (mandatory and discretionary) also serves to keep the prison population down and decrease the costs of the penal system. *Morrissey v. Brewer,* 408 U.S. 471, 477, 478 (1972).

The granting of statutory or industrial good time has a different purpose than the granting of discretionary parole. Good time is an incentive to conformity in prison and on parole. The forfeiture of good time is the statutorily mandated way of "controlling and punishing" institutional and parole misconduct. If a prisoner does not want to risk parole revocation and the potential postponement of his final discharge date, the legislature allows him to waive good time and spend his full sentence in prison. Sec. 53.11 (4), Stats.

It appears to us that the legislature and Department can, as a matter of policy, decide that forfeiture of good time is a sufficient means to "control and punish" parole misconduct and that it is detrimental to the operation of a successful discretionary parole system to put the discretionary parolee in jeopardy of postponement of his final discharge date by not crediting his "parole time" as time served on his sentence. We thus find that a real and legally relevant distinction exists between discretionary and mandatory release parolees as to crediting sentences with time served on parole, and we conclude that Drummer has not been denied equal protection of the law.[30]

Drummer's second contention is that the seven-month delay between his parole revocation hearing and the decision on his *Putnam* street time hearing caused him injury, *i.e.*, the anxiety and concern the individual feels with regard to an uncertain status and foreclosure of

---

[30] It must be conceded that the effect of not crediting "parole time" to the discretionary parolee and "street time" to the mandatory release parolee is the same. In both instances the failure to credit—or stated otherwise, the forfeiture of—time successfully served on parole extends the final discharge date of the parolee.

Forfeiture of good time of a discretionary parolee may extend his time in incarceration by postponing the mandatory release time. Similarly, the forfeiture of non-street time of a mandatory release parolee extends his time in incarceration.

judicial review of the Department's exercise of discretion because his prison time would be served before there was court review.

Drummer has been discharged from custody, and we decline to determine what period of time between the parole revocation hearing and the good time forfeiture hearing may be said to constitute unreasonable delay and, where there is an unreasonable delay, whether or not the prisoner must prove prejudice.

We note that the *Manual of Practices and Procedures* of the Bureau of Probation and Parole of the Wisconsin Division of Corrections states that if a final revocation hearing is required for a mandatory release parole violator, the Hearing Examiner will conduct a hearing on forfeiture of street time immediately thereafter. If the person waives the final revocation hearing the Hearing Examiner will, if necessary, schedule and conduct a hearing on forfeiture of street time. From the tenor of the *Manual,* we assume the intent is that this hearing be scheduled promptly. Obviously, a prompt hearing on forfeiture of good time for discretionary and mandatory release parolees is desirable, and we assume that the Department will establish appropriate practices and procedures to assure a prompt hearing.

*By the Court.*—The action of Monroe Lake Hauser, Jr., is dismissed; the appeals of Carlos B. Brown, Jr., and Nathaniel S. Drummer are dismissed; and the rights under sec. 57.11(2a) and (7), Stats., are declared in accordance with the opinion herein.