LOCKLEAR, a/k/a Joseph Dial, Plaintiff in error, v. STATE, Defendant in error.

Court of Appeals

*No. 77–702–CR. Argued October 25, 1978.—Decided December 20, 1978.*
(Also reported in 274 N.W.2d 898.)

---

[3] *Brunette v. Bierke*, 271 Wis. 190, 196, 72 N.W.2d 702 (1955).

394

For the plaintiff in error the cause was argued by *Ronald L. Brandt,* deputy state public defender, with whom on the brief was *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

Before Moser, P.J., Brown and Bode, JJ.

BROWN, J.   On May 23, 1973, Joseph Locklear was convicted of theft, contrary to sec. 943.20 (1) (d) and (3) (b), Stats. The court sentenced Locklear to an indeterminate term of imprisonment not to exceed two (2)

years. The sentence was stayed and Locklear was placed on two (2) years probation, the first six (6) months of which were to be served under work release pursuant to sec. 973.09 (4), Stats.

After Locklear had served his six months on work release, he requested that his probation be transferred to Racine where he had obtained a job. He moved to Racine on or about March 28, 1974 and remained there until his original term of probation expired on May 23, 1975.

On June 19, 1975 a probation violation report was filed by the Bureau of Community Corrections. The violation report alleged that Locklear had violated his probation by absconding on March 28, 1974. On March 15, 1976, revocation proceedings were initiated against Locklear. A probable cause hearing was held on March 18, 1976. On March 24, 1976, the probable cause hearing examiner rendered his findings of fact and conclusions of law. He concluded that since the violation report was not filed until after Locklear's probation had expired, the Bureau of Community Corrections was without jurisdiction to revoke Locklear. Locklear was then released from jail. On May 5, 1976, the Bureau of Probation and Parole petitioned the Secretary of the Department of Health and Social Services for a review of the decision of the probable cause hearing examiner. The bureau also requested that the secretary reverse the findings of the probable cause hearing examiner, and find probable cause that Locklear had absconded. Sometime after May 5, 1976, the Secretary of the Department of Health and Social Services reviewed the finding of the probable cause hearing examiner. The secretary determined that the hearing examiner had no legal authority to conclude that the bureau was without jurisdiction to revoke Locklear's probation. The secretary then found probable cause to believe that Locklear had absconded and continued Locklear's probation for an

extended fifteen month period. The extended fifteen-month period represented the period between the alleged violation and the date the violation report was filed. No final hearing on the defendant's alleged violation of probation for absconding was ever held.

On November 18, 1976, Locklear filed a post-conviction motion, pursuant to sec. 974.06, Stats., alleging that his continued probation was unlawful and unconstitutional. The motion was denied on June 7, 1977 without a hearing. Locklear is appealing the denial of this motion.

The order denying Locklear's post-conviction relief was issued approximately three weeks prior to the expiration of Locklear's extended probation. However, on June 17, 1977, Locklear's probation agent wrote a letter to the court informing the court that the department had decided to reinstate Locklear on probation rather than proceed to revocation, as they felt they had a right to do under the court's decision denying Locklear's post-conviction motion. The agent then requested that the court extend Locklear's probation. On June 21, 1977, the court extended Locklear's probation for one year or until Locklear's court obligations were met,[1] pursuant to sec. 973.09(3), Stats.[2] On June 27, 1978, the court granted another extension for one year or until

---

[1] When the defendant's sentence was stayed, he was placed on probation with the condition that he pay restitution to the complaining witness, Master Charge, in the amount of $952.47, plus court costs of $31.80, plus $120.00 in attorney fees for his court-appointed lawyer. At the time the bureau filed the probation violation report, some of the restitution still remained unpaid. It appears from the record that the bureau's purpose in desiring to continue the defendant on probation is to obtain the remainder of this restitution.

[2] 973.09 *Probation.*

. . . .

(3) Prior to the expiration of any probation period, the court may for cause by order extend probation for a stated period or modify the terms and conditions thereof.

all court obligations were paid. As of the date of this decision, Locklear was still on probation under the second extended period. Thus, the issues raised on appeal are not moot.

This case primarily involves the interpretation and application of sec. 57.072, Stats.,[3] which states:

57.072 *Period of probation or parole tolled.* The period of probation or parole ceases running upon the offender's absconding or committing a crime or some other violation of the terms of probation or parole which is sufficient in the opinion of the court or the department to warrant revocation of probation or parole. It remains tolled until the happening of one of the following events: Receipt of the offender at the penal institution to which sentenced or from which paroled; in cases supervised by the department, reinstatement of the offender's parole or probation by order of the department; in cases of misdemeanants, reinstatement of probation by order of the court. The date of the order of reinstatement is the date on which the period of probation or parole again begins to run.

Locklear claims that this statute must be interpreted to mean that his probation or parole is not tolled unless and until the department takes some affirmative step to start revocation proceedings within a reasonable time after notice of the violation *and* during the period of probation or parole. Once the term of probation or parole has ended, unless such action is taken, Locklear argues, the department has lost jurisdiction over the defendant.

Second, Locklear is arguing that, notwithstanding the language of the statute, to allow the department to revoke his probation after the termination date, without

---

[3] While sec. 57.072, Stats., was repealed and recreated in ch. 352, §5, 1977 Wis. Laws, the proceedings involved in this case took place prior to the repeal and were pursuant to the prior statute. Therefore, the new statute has no effect on the disposition of this case.

notice prior to the termination date, deprives him of due process under *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), and *Morrissey v. Brewer*, 408 U.S. 471 (1972) (no timely notice and hearing) and under the doctrine of *Rochin v. California*, 342 U.S. 165 (1952) (the State's conduct offends the canons of decency and fairness).

Third, Locklear asserts that the department is estopped from revoking him because the department's own policy requires that action be taken prior to the date for termination of probation.

Lastly, Locklear claims that the department is estopped from revoking him under the doctrine of laches. His argument is that a fifteen month delay, from the time of alleged violation to the time of filing the violation report, is an unreasonable delay that prejudiced him. He also asserts that the department had knowledge of his alleged violation during this time and did nothing about it. Therefore, the doctrine of laches applies.

The State maintains that the language of the statute is plain. The term of probation is tolled once a violation has occurred. Since the probation ceases to run on the date of the violation, the State claims that Locklear's probationary period had not terminated when the violation report was filed and, therefore, the department had jurisdiction to proceed to revoke or place him back on probation.

The trial court accepted the State's position and held that at the time of violation report was filed, Locklear's probationary term had not expired. The trial court further held that since the defendant's probationary term had not expired, the court could extend his probation, pursuant to sec. 973.09(3), Stats., if good cause for the extension was shown. The court then found that the secretary's determination that probable cause existed to believe that the defendant had absconded was sufficient "good cause" to justify extending Locklear's probation. We disagree with the trial court.

Section 57.072, Stats., provides that an offender's probation or parole "ceases running upon the offender's absconding or committing a crime . . . . It remains tolled until . . . [r]eceipt of the offender at the penal institution to which sentenced or . . . reinstatement of the offender's parole or probation by order of the department . . . ." While the statute does not specifically state that before the tolling statute applies a final determination must first be made by the department that the offender has absconded, committed a crime or committed a probation violation sufficient to warrant revocation, final determination proceedings are constitutionally required as a matter of procedural due process. *Gagnon v. Scarpelli, supra; Morrissey v. Brewer, supra.* The United States Supreme Court's decisions in *Morrissey* and *Scarpelli* were not decided until after the legislature had passed sec. 57.072, Stats. Since the decisions in *Morrissey* and *Scarpelli* were based on procedural due process, there was no need for the legislature to change the statute. The substantive provisions could remain, leaving the procedural aspects to be applied to the substantive provisions. Since the legislature did not change the statute after the cases were decided, we must assume that the legislature intended to have the *Morrissey* and *Scarpelli* procedural due process requirements read into the statute and applied to the substantive provisions of the statute. Otherwise, the statute would be unconstitutional.

Reading the statute in light of *Morrissey,* and *Scarpelli,* before an offender may be sent back to a penal institution or reinstated on probation as a result of an alleged probation or parole violation, there must be both a probable cause hearing and a final hearing (unless waived) with a final determination that the terms of probation or parole were violated. In addition, the

offender has a constitutional right to notice of the alleged violation, the right to be confronted with the evidence against him, the right to cross-examine and the right to testify, call witnesses and defend himself. To avoid unconstitutionality, these requirements must be read into sec. 57.072, Stat. Thus, the statute must be read to require a final determination by the department after a final revocation hearing, before the tolling statute applies.

Essentially sec. 57.072 is a credit statute. Applying the statute to parole, it declares that an offender gets no credit for time served while on parole, beginning with the date of the violation, if it is later proved that he committed the violation. If he is returned to the prison, he only gets credit for time served during good behavior (i.e., before the violation). The remainder of his term is determined by adding time actually served in jail and prison plus the time served on parole, while not in violation of parole. Then, that amount as time served is subtracted from the total sentence (with the appropriate good time also credited).

Likewise, if an offender is on probation and he is found, after a final hearing, to have absconded, committed another crime or committed a violation sufficient to warrant revocation, then the department has two choices: (1) they may revoke his probation, in which case he is then either returned to the sentencing court for sentencing (if sentence was withheld) or sent to prison (if he was sentenced and sentence was stayed); or (2) the department may reinstate his probation. If he is sent to prison after revocation, then no time served while on probation is credited towards his sentence. If his probation is reinstated, only the time served prior to the violation is credited against his term.

Section 57.072, Stats., was intended to fit into this "total credit for time served" system. It makes no sense and would be unconstitutional if the statute were read in any other manner. To deny a parolee or probationer credit for the time served after an alleged violation, if it later turned out that he did not commit the violation, would be fundamentally unfair. It would be punishing him for something he did not do, simply on the basis of the department's allegation that he did. Such a result would be a denial of due process and fundamental fairness. Thus, before an offender may be denied credit by virtue of the tolling statute for time spent while on probation or parole, there must be a final determination after a final revocation proceeding that he either absconded, committed another offense or committed a rule violation sufficient to warrant revocation.

No such determination has ever been made in this case. The probable cause hearing examiner released Locklear after finding that the department had no jurisdiction to revoke him. His decision was reversed by the secretary of the department. The secretary then found probable cause to believe that Locklear had absconded. That was the one and only finding made in this case. Locklear was not rearrested. He was not given notice of a final hearing. He was not permitted to be confronted with the charges against him. He was not permitted to challenge the charges, or cross-examine witnesses against him. Most importantly, he was not given an opportunity to present his defense or any mitigating circumstances. Rather, the department deprived him of these constitutionally guaranteed rights by requesting that the court, based on the probable cause finding, extend his probation. Once the probation was extended, there was no reason for the department to then proceed to a revocation proceeding. Essentially, what the department did by obtaining an

extension of Locklear's probation from the court was to deprive him of his right to prove his innocence.

The detriment that results from this procedure is exemplified in this case. It appears that Locklear had a possible defense and at the very least mitigating circumstances.[4] He claims that his defense would have been that he was given permission by his agent to move to Racine. He also claims his agent told him his probation would be transferred to Racine and his new agent would contact him. He claims that at the very least, there was a misunderstanding as to whether he was to contact the Racine Probation Department or whether they would contact him. In any event, even assuming he was told to contact the Racine Probation Department, Mr. Locklear argues that he could have claimed the defense of laches, or some other defense, by showing that the department failed to do its duty under law and attempt to supervise him. He claims the department never tried to locate him nor did they file a violation report, contrary to their own department policies. For fifteen months they did nothing. Meanwhile, Mr. Locklear's original agent left the employ of the department. By waiting fifteen months to take any action, the department deprived the defendant of his sole witness to corroborate his claim of defense. The defendant claims that these facts, if he had been permitted to present them, would have provided a complete defense to the absconding charge or, at the very least, constituted mitigating circumstances. In addition, they may have provided the factual basis for the defense of laches which would have deprived the department of jurisdiction to revoke or reinstate his probation.

[4] While his defense is not part of the record (primarily because the department prevented the defendant from presenting his defense at the final hearing), we feel, under the circumstances, that we can note his claim of defense solely for the purpose of showing detriment.

None of this evidence, however, was ever presented. By unilaterally deciding to seek an extension, the department deprived Locklear of the opportunity to present these facts. Had he been permitted to present these facts, it may have been determined that he had not violated his probation or, because of laches, the department had lost jurisdiction to revoke or reinstate his probation. Locklear would have therefore been released from custody. Instead, he has remained on probation for another three and one-half years (June, 1975 to the present) without any determination by anyone at anytime that he did in fact violate probation.

This court cannot sanction such a result, nor do we feel the statute was intended to permit this result. Unless the defendant waives his right to a hearing, he must be given a final hearing in which he can present his defense. If the department finds that he has violated his probation, then and only then can the department continue his probation beyond the original term by reinstatement. Once the department has reinstated his probation after the final hearing, he must then serve the remainder of his original term, if any, plus the period beginning with the date of the violation and ending with the date of reinstatement, (the tolled period). Once reinstated, if the department then has "good cause" to justify a further extension, it may apply to the court *before* his new termination date expires, for an extension pursuant to sec. 973.09 (3), Stats.

Since the department failed to hold a final hearing and make a final determination that Locklear had absconded or committed a violation which would warrant revocation, the department decision of June 17, 1977 to reinstate Locklear's probation was invalid. Unless reinstated after a final hearing with a final determination that Locklear

absconded or committed a violation sufficient to warrant revocation, Locklear's probationary term ended on May 23, 1975. No final determination was made in this case, nor has Locklear's probation been lawfully reinstated. Therefore, his probation terminated May 23, 1975. All subsequent orders to extend his probation made by the court were unlawful. Section 973.09(3), Stats., provides that "[*p*]*rior to the expiration of any probation period,* the court may for cause by order extend probation . . . ." (Emphasis added.) Since all court orders extending probation were made *after* the termination of Locklear's valid probationary term, the extension orders were unlawful.[5]

While under ordinary circumstances our decision would not necessarily preclude the department from now holding a final hearing and reinstating a probationer's probation, in this case, the department is precluded from proceeding any further against Locklear.

After the parole or probation violation warrant has been executed, a probationer or parolee is entitled to a

_____

[5] As noted in footnote 3, sec. 57.072, Stats., has been repealed and recreated by ch. 352, §5, 1977 Wis. Laws. We wish to note, however, that the result in this case is consistent with the provisions of the new statute. Under the new statute, credit for the time between the alleged violation and the reinstatement must be treated as time served *unless* the reinstatement order concludes that the probationer or parolee did in fact violate the terms of probation or parole. The determination that the probationer or parolee violated the terms of probation or parole can only be made after a final hearing. Since the reinstatement order in this case did not contain a finding, after a final hearing, that the defendant did in fact violate the terms of his probation, under the new law he was entitled to have time between the alleged violation and the reinstatement order treated as service of his probationary period. Treating this time as service, Mr. Locklear's probation terminated May 23, 1975, prior to any court extension. Since court extensions may only be ordered before the termination date, under the new law these extension would also be unlawful.

final hearing within a reasonable period of time. *Gagnon v. Scarpelli, supra; Morrissey v. Brewer, supra; Moody v. Daggett,* 429 U.S. 78, 87 (1976). The revocation proceedings in this case were initiated on March 15, 1976. Two and one-half years is *not* a reasonable period of time. It was the department's decision, not Locklear's, to reinstate Locklear's probation without a final hearing. As a result of the department's action, Locklear did not receive a final hearing within a reasonable period of time. Even assuming, arguendo, that some of the delay was due to the decision of the department to await this decision on this appeal, over a year passed from the time of the probable cause hearing examiner's decision until the department finally decided to reinstate Locklear's probation. There is no possible excuse for this unreasonable delay. No appeal was pending during this period. Therefore, having failed to hold a final revocation hearing within a reasonable period of time, the department has lost its right to proceed any further against Locklear. To permit the department to now hold a revocation proceeding (even for the purpose of reinstating probation) would violate Locklear's right to due process. *Gagnon v. Scarpelli, supra; Morrissey v. Brewer, supra.* Therefore, Locklear must be discharged from probationary custody.

Locklear has raised a number of other issues in this appeal. Because of our disposition of the case on the issues decided above, we need not decide whether the tolling statute permits the department to file a violation report after the term of probation has expired and proceed to revoke or reinstate. Nor are we deciding whether the statute is unconstitutional if it permits the department to file the violation report after the probationary term has expired. Because the facts in the record are insufficient to establish a factual basis for the laches issue, we also are not ruling on whether the department

was precluded from attempting to revoke or reinstate Locklear's probation.

*By the Court.*—Order denying Locklear's post-conviction motion reversed; orders extending probation reversed. Case remanded with direction to discharge Locklear from probationary custody.