STATE EX REL. Barbara AVERY, Petitioner-Respondent,

v.

Donald PERCY, Secretary of Wisconsin Department of Health & Social Services, Nona Switala, Superintendent of Taycheedah Correctional Institute, Appellants.

Court of Appeals

No. 79–1909. Argued August 6, 1980.—Decided October 27, 1980.
(Also reported in 299 N.W.2d 886.)

For the appellants there was a brief by *Bronson C. La Follette*, attorney general, and *Dorothy H. Dey*, assistant attorney general. Oral argument by *Ms. Dey*.

For the petitioner-respondent there was a brief and oral argument by *Jimmie G. Davison* of Milwaukee.

Before Voss, P.J., Brown and Scott, J.J.

VOSS, P.J.    This is an appeal from an order based upon a habeas corpus petition filed on behalf of Barbara Avery ordering her release from the custody of the State. The sole issue presented is whether the Department of

Health and Social Services may revoke a parolee's conditional release when, although both the parole violation and the initiation of formal revocation procedures occurred prior to the parole expiration date, the final revocation hearing was not held until after the parolee's parole period had expired. We find such a revocation procedure to be proper and, therefore, reverse the trial court.

On November 15, 1974, Barbara Avery was sentenced to serve four years at the Wisconsin Correctional Center for Women. Ms. Avery was paroled on December 23, 1976. Her parole period was scheduled to terminate on November 15, 1978. On September 20, 1978, a criminal complaint was issued charging Ms. Avery with shoplifting.

Probable cause to revoke Avery's parole was found at a preliminary probable cause hearing held October 18, 1978. A final revocation hearing was scheduled for December 18, 1978. Due to unexplained delay, however, a final revocation hearing was not held until March 14, 1979. At that hearing, the examiner revoked Avery's parole and ordered that one-hundred percent of her "good time"—time she served on parole prior to the issuance of the criminal complaint—be forfeited.

Upon a petition for and the issuance of a writ of habeas corpus, a hearing was held on October 26, 1979. At that hearing, the trial court found that the case of *Locklear v. State*, 87 Wis.2d 392, 274 N.W.2d 898 (Ct. App. 1978), barred the revocation of Avery's parole since the final revocation hearing was not held prior to the termination of Avery's original parole period.[1] The trial

---

[1] The trial court concluded:

[T]his Locklear versus State in my reading of it at this time, would indicate that before the tolling statute 57.072 were to toll the running of the parole period, that there must be not only a probable cause hearing but also a final hearing tolling such period of time.

court reasoned that under sec. 57.072, Stats.,[2] the mere initiation of parole revocation proceedings failed to effectively toll the running of Avery's parole period. We are of the opinion that the trial court, in reaching its conclusion, misinterpreted our holding in the *Locklear* case.

In *Locklear v. State*,[3] probation revocation proceedings were filed against Locklear approximately one year after his probation period had expired. As a result of the suspected probation violation and solely upon the basis of a hearing on the issue of probable cause to revoke, it was determined that Locklear's probation period should be extended for an additional fifteen months. Just prior to the expiration of Locklear's extended fifteen-month probation period, the circuit court for Kenosha county extended his probation for another year as a result of his failure to meet his court ordered obligation of making restitution. A year later, the same court ordered an extension of probation for another year or until Locklear met his restitution requirement. No final probation revocation hearing was ever held.

---

[2] Section 57.072, Stats., provides as follows:

57.072 Period of probation or parole tolled. (1) The period of probation or parole ceases running upon the date the offender absconds, commits a crime or otherwise violates the terms of his or her probation or parole which is sufficient, as determined by the department, to warrant revocation of probation or parole. If the probationer or parolee is reinstated rather than revoked, the period between the alleged violation and the reinstatement shall be treated as service of the probationary or parole period, unless the reinstatement order concludes that the probationer or parolee did in fact violate the terms of his or her probation or parole, in which case the reinstatement order shall credit days spent in a jail, correctional institution or other detention facility as service of the probationary or parole period.

[3] It should be noted that *Locklear* was decided under sec. 57.072, Stats. (1975), which was repealed and recreated by ch. 353, Laws of 1977. The changes made, however, do not conflict with the *Locklear* ruling.

Upon review of the probation extensions, this court held that under sec. 57.072, Stats. (1975),[4] Locklear's probation could not be revoked or extended, effectively denying him credit for time served on probation after the date of the alleged violation, without first determining that he violated his probation in a final revocation hearing. In reaching this conclusion, we clarified our position by stating that:

While under ordinary circumstances our decision would not necessarily preclude the department from now holding a final hearing and reinstating a probationer's probation, *in this case,* the department is precluded from proceeding any further against Locklear. [Emphasis added.] *Id.* at 405, 274 N.W.2d at 904.

Subsequent portions of the opinion made it clear that the reason the department was precluded from proceeding further against Locklear was the prejudicial delay of two and one-half years which would have existed if attempts had been made at that time to bring about a final revocation hearing.

This court in *Locklear* did not hold that both the preliminary and final revocation hearings had to be held prior to the expiration of the parole or probation period in order to effectively revoke an offender's conditional

---

[4] This court described the application of sec. 57.072, Stats. (1975), in *Locklear v. State,* 87 Wis.2d 392, 401, 274 N.W.2d 898, 902 (Ct. App. 1979), as follows:

Essentially sec. 57.072 is a credit statute. Applying the statute to parole, it declares that an offender gets no credit for time served while on parole, beginning with the date of the violation, if it is later proved that he committed the violation. If he is returned to the prison, he only gets credit for time served during good behavior (i.e., before the violation). The remainder of his term is determined by adding time actually served in jail and prison plus the time served on parole, while not in violation of parole. Then, that amount as time served is subtracted from the total sentence (with the appropriate good time also credited).

release. In *Locklear*, we held that a probationer's probation could not be revoked without the proper due process procedures of a timely final revocation hearing. We further held that a delay of two and one-half years is *not* timely, and, therefore, in Locklear's case, the department was barred from holding the required revocation hearing.

In this case, the trial court erred when, upon the basis of the *Locklear* holding, it reversed Avery's revocation of parole on the ground that the Department failed to hold both the preliminary and final revocation hearings prior to the parole period's expiration date. Section 57.072, Stats., does not demand that a final revocation hearing be held prior to the expiration of the parole period in order to enable the Department to effect revocation. In order to effectuate the purpose of probation and parole, and at the same time protect society from further jeopardy, this result must be possible. Without it, the last remaining months of a conditional release term would in reality be an unconditional release since an adequate and timely revocation procedure would perhaps not be expeditious enough to meet the deadline posed by the expiration of the conditional release period. If the trial court's decision were to prevail, a probation or parole violation taking place during the last few weeks of a conditional release period would have to be ignored since it would be unlikely that a final revocation hearing could be held prior to the expiration of the release period.

Because this case does not present the question of whether revocation proceedings must be initiated prior to the expiration of a parole or probation period in order to revoke a conditional release under sec. 57.072, Stats., we do not deal with that issue. We are also not deciding the constitutionality of the filing of a violation report after the parole or probationary term has expired.

Avery raises two issues upon which this court feels compelled to comment. On remand, we believe the trial

court should confront and resolve the controversy they present.

First, Avery argued at trial and again on appeal that the revocation hearing examiner erred in disallowing *all* of the time served on parole from the date of her conditional release to the date of the alleged violation. The hearing examiner's order states that "one hundred percent of the Good Time be forfeited which includes all Street Time." Avery's counsel contended at oral argument that she is entitled to credit for all successful time spent on the street from the date of conditional release from prison until the date of violation. Therefore, she concludes that the hearing examiner cannot by law order forfeiture of all "Street Time."

Avery's argument requires an explanation of the difference between time spent on the street by a discretionary parolee and time spent on the street by a mandatory release parolee. We start with the law that upon conviction and incarceration, the offender is automatically given good time credits pursuant to sec. 53.11(1), Stats. This is called statutory good time and must be given upon entrance to the prison. However, it may be taken away by the Department, in its discretion, for violations of Department rules. An offender may also be awarded credit for "diligence in labor or study" under sec. 53.12, Stats., which may also be taken away.

The term "maximum release date" is used to describe the date upon which the full sentence imposed by the court expires. The term "mandatory release date" is the maximum release date minus the good time accumulated either by secs. 53.11 or 53.12, Stats.

When an offender reaches the mandatory release date, release onto the streets must be made if the offender has not lost any good time. The offender is known as a mandatory release parolee. The time from the date of mandatory release until the maximum release date is

spent on the street by virtue of the good time credits accumulated. This time is served out of prison as a matter of right. *State ex rel. Hauser v. Carballo*, 82 Wis.2d 51, 55–57, 261 N.W.2d 133, 135–36 (1978). However, this time may be totally rescinded after a parole violation. *Id.* at 58, 261 N.W.2d at 137; sec. 57.06 (3), Stats. The mandatory release parolee is serving his "good time credits" while on parole. Because the Department may revoke the mandatory release parole violator's good time credits pursuant to sec. 53.11(7) (b), Stats., it can, in effect, deny him sentence credit for successfully served parole. *State ex rel. Hauser v. Carballo, supra,* at 59, 261 N.W.2d at 137.

On the other hand, time spent on parole by a discretionary parolee is unrelated to good time. The discretionary parolee is out on the street because the Department feels the offender is a good risk and not because the Department must release the offender pursuant to statute. Consequently, the offender is on the street serving prison time, not good time. The difference is stated succinctly in *State ex rel. Hauser v. Carballo, supra,* at 76, 261 N.W.2d at 145, as follows:

Time spent on parole by a discretionary parolee (hereinafter referred to as "parole time") has nothing to do with good time; this "parole time" is in lieu of prison time without reference to good time. Time spent on parole by a mandatory release parolee (which is referred to as "street time" in this opinion) is time served out of prison as a matter of right [*i.e.,* good time, sec. 53.11 (7) (a)], but subject to withdrawal on parole revocation under sec. 53.11(7) (b).

To summarize, the discretionary parolee is serving "prison time" while on parole; the mandatory release parolee is serving his "good time credits" while on parole. Because the Department may revoke the mandatory release parole violator's good time credits pursuant to sec. 53.11(7) (b), it can, in effect, deny him sentence credit for his successfully served parole time.

Once a discretionary parolee reaches his mandatory release date, his status is the same as a mandatory release parolee. *Putnam v. McCauley,* 70 Wis.2d 256, 260, 234 N.W.2d 75, 77 (1975). Time successfully spent on parole prior to the mandatory release date cannot be taken away. The Department can take away only that street time occurring after the mandatory release date. Once a parolee reaches his mandatory release date, whether he was released on discretionary parole prior to his mandatory release date or not until his mandatory release date, if "good time" is revoked, any time spent on parole after the mandatory release date is added to the maximum of his original sentence. *Id.* Time successfully spent on parole prior to the mandatory release date is not added to the maximum sentence.

The task upon remand to the trial court is for the trial court to determine whether the Department took away successfully served street time prior to Miss Avery's mandatory release date. If the Department did this, it is in error, and it will be the trial court's duty to make the appropriate adjustment. If, on the other hand, the Department took away only statutorily earned good time and gave her credit for all the time she successfully served out on parole prior to the mandatory release date, then the revocation order is valid and may stand.

Second, Avery contends that due to the substantial delay in holding her final revocation hearing, a delay allegedly caused by the Department, the Department no longer has jurisdiction to revoke her parole. The *Locklear* case compels the Department to hold a final revocation hearing within a reasonable time following the initiation of revocation proceedings.[5] In this case, the final revocation hearing was held approximately seven months subsequent to the date of the alleged violation

[5] *Locklear, supra,* at 405–06, 274 N.W.2d at 904.

and initiation of the proceedings and approximately four months after the expiration of Avery's sentence. The trial court should make a determination whether the delay presented in the instant case is unreasonable under appropriate due process standards.

*By the Court.*—Order reversed and cause remanded for proceedings not inconsistent with this opinion.