William Patrick BURKE, Petitioner-Appellant,†

v.

Patricia GOODRICH, Secretary, Department of Health
& Social Services, Steven Bablitch, Director, Division
of Corrections, Gordon Abrahamson, Superintendent,
Dodge Correctional Institution, Respondents.

Court of Appeals

*No. 89-1306. Submitted on briefs November 10, 1989.—Decided
January 11, 1990.*

(Also reported in 453 N.W.2d 497.)

†Petition to review denied.

For the petitioner-appellant the cause was submitted on the briefs of *William Patrick Burke,* pro se, of Waupun.

For the respondents the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Jerome S. Schmidt,* assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J.    William Burke, an inmate at the Dodge Correctional Institution, appeals from an order denying his petition for habeas corpus. He raises three issues: (1) whether a prisoner who has reached his or her

"mandatory release" date—who has served the entire sentence less good time—must be released outright, as opposed to released on parole as provided by sec. 53.11(7)(a), Stats. (1979-80);[1] (2) whether release on parole in such circumstances violates a prisoner's protection against double jeopardy; and (3) whether such a release implicates the prisoner's liberty interests to the extent that he or she is entitled to a "due process" hearing prior to release. We resolve each issue against Burke and affirm the trial court's order.

Burke was convicted of second degree murder, attempted armed robbery and concealing his identity while attempting armed robbery. He was sentenced to an indeterminate term of not more than twenty years to run concurrently with his armed robbery and concealing identity sentences.

On April 28, 1987, his mandatory release date, Burke was released to parole status. At that time he had earned over ten years of good time credit. On or about September 2, 1987, Burke absconded from supervision and his activities and whereabouts were unknown until he was apprehended in Illinois on May 6, 1988. In October, 1988, the Department of Health and Social Services revoked Burke's parole and ordered the forfeiture of five years of good time.

On appeal, he does not challenge the revocation; he argues only that once a prisoner earns good time in prison, he cannot be required to "serve" the good time on parole. The trial court rejected the argument, ruling

[1] All references are to the 1979–80 Wisconsin Statutes which were in effect at the time Burke was sentenced. Section 53.11(7)(a), Stats., states that prisoners who have served the terms of their sentences, less good time, "shall be released on parole." Parole status continues until expiration of the full sentence term.

that sec. 53.11(7), Stats., plainly provided that mandatory release is release to parole supervision.

■ This case involves the construction of several statutes governing "good time" credit and parole. Statutory construction is a question of law which we review without deference to the trial court's decision. *Suburban State Bank v. Squires*, 145 Wis. 2d 445, 448, 427 N.W.2d 393, 394 (Ct. App. 1988).

Burke argues that the good time he has earned pursuant to secs. 53.11(1) and 53.12(1), Stats., entitles him to a "diminution of sentence" and that he thus cannot be required to "serve" this good time on parole. Section 53.11(1) provides that: "Each inmate who shall conduct himself [or herself] in a proper manner . . . shall be *entitled to good time or diminution of sentence . . . .*" (Emphasis added.) Similarly, sec. 53.12(1) states that: "[E]very inmate whose diligence in labor or study surpasses the general average is *entitled to a diminution of time* at [specified] rate[s] . . . .." (Emphasis added.)

Burke maintains that by placing him on parole pursuant to sec. 53.11(7)(a), Stats., the department "impair[ed] previously earned entitlements of diminution earned pursuant to sections 53.11(1) and 53.12(1)." As we have noted, sec. 53.11(7)(a) requires that prisoners who reach their mandatory release date (full sentence less good time) be released on parole until expiration of the full term. Burke asserts that "[i]t is clear that the leading idea and primary function of sections 53.11(1) and 53.12(1) is the promotion of good behavior and diligence. It is not the establishment of parole custody." Therefore he argues that sec. 53.11(7)(a) must be "severed" in order to "accomplish the legislative purpose" of secs. 53.11(1) and 53.12(1). We are not persuaded.

We acknowledge, as does the attorney general, that the "diminution of sentence" and "diminution of time" language in secs. 53.11(1) and 53.12(1), Stats., read independently from sec. 53.11(7)(a), "might lead one to perceive ambiguity." To adopt Burke's view, however, would be to nullify sec. 53.11(7)(a) which, by its plain language, requires release "on parole" when a prisoner reaches his or her mandatory release date. "Such a reading of statutes is not favored by the law, and it is the duty of the courts, if possible, to construe [the] statutes such that [each] will be operative." *Maxey v. Racine Redevelopment Authority,* 120 Wis. 2d 13, 24, 353 N.W.2d 812, 818 (Ct. App. 1984). The law prefers "a construction which gives meaning to every portion of a statute." *Unified S.D. No. 1 of Racine County v. WERC,* 81 Wis. 2d 89, 98, 259 N.W.2d 724, 730 (1977).

Reading the statutes as a whole, as we are required to do, it is apparent that secs. 53.11(1) and 53.12(1), Stats., have to do with the computation of good time. Section 53.11(1) describes how the institution superintendents are to record and prorate good time, and sec. 53.12(1) authorizes additional "credit for good conduct" for inmates "whose diligence in labor or study surpasses the general average . . .." Neither discusses release. Section 53.11(7)(a), however, sets forth what occurs when the point is reached where a prisoner's good time, if subtracted from his or her full sentence, would mathematically result in completion of that sentence. In that case, sec. 53.11(7)(a) plainly states that the prisoner is to be released "on parole," and that the parole will continue until the term originally specified for the full sentence has expired.

Thus, a prisoner accumulates good time calculated under secs. 53.11(1) and 53.12(1), Stats., and is rewarded

by being allowed to serve out his or her sentence under the less restrictive conditions of parole under sec. 53.11(7)(a). Whatever the legislature's choice of language in the statutes dealing with the basis for, and calculation of, good time, the language used in the sole statute dealing with mandatory release is plain and unambiguous. The release is on parole, as has been held in *State ex rel. Hauser v. Carballo,* 82 Wis. 2d 51, 261 N.W.2d 133 (1978).

In *Hauser,* the supreme court specified that a mandatory release parolee is "released on parole when he [or she] [has] *only* good time left to serve." *Hauser,* 82 Wis. 2d at 58–59, 261 N.W.2d at 137 (emphasis in original). The court explained that "parole is viewed as an extension of the prison walls, and the parolee remains under the control and supervision of the Department *until his [or her] entire sentence is completed." Id.* at 55, 261 N.W.2d at 135 (footnote omitted; emphasis added). Thus, when a prisoner is released as a mandatory release parolee he or she has not finished serving the sentence but rather is merely allowed the privilege of serving his or her earned good time on parole rather than in prison. *See State ex rel. Avery v. Percy,* 99 Wis. 2d 459, 465, 299 N.W.2d 886, 890 (Ct. App. 1980), where we held that a mandatory release parolee "is serving his [or her] 'good time credits' while on parole."

Burke next contends that placing him on parole punished him a second time for the crime for which he was originally sentenced. The fifth amendment to the United States Constitution provides, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." "The guarantee against double jeopardy provides protection . . . against multiple pun-

ishments" for the same crime. *State ex rel. Bieser v. Percy*, 97 Wis. 2d 702, 707, 295 N.W.2d 179, 181 (Ct. App. 1980). But parole is not punishment. Any notion of punishment one might perceive in parole or its revocation is not attributable to the parole itself but to the crime for which the parolee was originally convicted and sentenced. *Id.* at 709, 295 N.W.2d at 182. Parole revocation is "a continuing consequence of the original conviction from which parole was granted," *id.,* quoting *State ex rel. Flowers v. H&SS Department,* 81 Wis. 2d 376, 386, 260 N.W.2d 727, 733 (1978), and cannot form the basis for a claim of double jeopardy such as that advanced by Burke.

Finally, Burke contends that he should have been afforded a due process hearing before being released to parole. He argues that his liberty interests were compromised because his good time was "forfeited" when he was placed on parole status. But, as we have said, he lost nothing by reason of his release on parole; indeed, he gained something: the opportunity to serve the remainder of his sentence outside the prison walls.

> Good time is time (measured by days) that the prisoner is entitled to spend on conditional liberty outside the institution. The prisoner has accumulated a fixed number of good time days. These days do not shed their characterization as good time merely because they are being served on parole. *Hauser,* 82 Wis. 2d at 66–67, 261 N.W.2d at 140–41.

No due process hearing was required prior to his release on parole. [2]

*By the Court.*—Order affirmed.

---

[2]When a prisoner has his or her mandatory parole revoked, he or she is entitled to a due process hearing on the grounds that revocation of mandatory parole is a deprivation of good time credits. *Hauser,* 82 Wis. 2d at 70, 261 N.W.2d at 142. Burke was granted such a hearing.