SILAS, and others, Plaintiffs-Respondents, v. PERCY, and another, Defendants-Appellants.

Court of Appeals, District IV

*No. 77–631. Argued September 20, 1978.—Decided October 13, 1978.*
(Also reported in 271 N.W.2d 171.)

For the appellants there was a brief by *Bronson C. La Follette,* attorney general and *Marguerite M. Moeller,*

assistant attorney general, and oral argument by *Marguerite M. Moeller,* assistant attorney general.

For respondents Silas Webster and Wade there was a brief by *Steven D. Phillips* and *Corrections Legal Services Program,* and oral argument by *Steven D. Phillips* of Madison. For respondent Hives there was a brief by *Howard B. Eisenberg,* State Public Defender, and *Jack E. Schairer,* Asst. State Public Defender and oral argument by *Elizabeth Alexander,* Asst. State Public Defender.

Before Gartzke, P. J. Bablitch and Dykman, JJ.

GARTZKE, P.J. This is an appeal from the judgment of the Circuit Court for Dane County, the Honorable Richard W. Bardwell, declaring that the respondents are entitled to "good time" credit under secs. 53.11 and 53.12, Stats.

The issue is whether a person incarcerated in the state correctional system pursuant to Ch. 54, the Youthful Offenders Act, is entitled to "good time" under secs. 53.11 and 53.12 so as to be eligible for mandatory release parole.

Each respondent was adjudged a youthful offender under Ch. 54 and was committed to the department. Each was incarcerated at the Wisconsin Correctional Institute at Fox Lake. Respondents filed a complaint in the Circuit Court for Dane County for a declaratory judgment to compel the department to credit them with good time credits. Respondents alleged that denial to youthful offenders of good time credits is contrary to Ch. 54 and violates the equal protection clause of the 14th Amendment to the United States Constitution.

The circuit court, granting respondents' motion for summary judgment, declared that respondents are statutorily entitled to good time credit. We agree.

The Youthful Offenders Act[1] is intended "to provide a specialized correctional program for youthful offenders. . ." and "an alternative to procedures in the criminal code relating to conviction and sentencing." Sec. 54.-01(2). A person under the age of 21 at the time of the commission of an offense may be determined to be a youthful offender if the court finds that the person will benefit from such disposition and society will not be harmed by it. A youthful offender disposition does not disqualify the person from entering public or private employment, securing occupational and professional licenses, or from voting or holding public office. Sec. 54.03(1), (3), (4)(a) and (b).

A youthful offender may be placed on probation, committed to the department and confined, or discharged. Secs. 54.03(4)(a), 54.10. The maximum term of a commitment cannot exceed the statutory limit for the crime for which the youthful offender is found guilty but may not be for less than one year. The Youthful Offenders Act makes no reference to the good time credit statutes, secs. 53.11 and 53.12.

Sec. 53.11(1) provides, "The warden or superintendent shall keep a record of the conduct of each *inmate*. . . Each *inmate* who shall conduct himself in a proper manner and performs all the duties required of him shall be entitled to good time or diminution of sentence according to the following table. . ." Sec. 53.12(1) provides, "In addition to the credit for good conduct prescribed in section 53.11, every *inmate* whose diligence in labor or study surpasses the general average is entitled to a diminution of time at the rate of one day for each 6 days during which he shows such diligence." (Emphasis added.)

Non-technical words and phrases are construed in accordance with their common and ordinary usage. *State*

---

[1] Repealed, Ch. 418, Laws of 1977.

*v. Killory,* 73 Wis.2d 400, 413, 243 N.W.2d 475 (1975). The ordinary and common meaning of a word may be established by the definition of a recognized dictionary. *Edelman v. State,* 62 Wis.2d 613, 620, 215 N.W.2d 386 (1974). Merriam-Webster's Third New International Dictionary (unabridged), 1971, defines "inmate" as "a person confined or kept in an institution (as an asylum, prison or poorhouse)."

Respondents are members of a mixed population of youthful offenders and adults at the Wisconsin Correctional Institute at Fox Lake, a medium security penitentiary. Sec. 53.01. They are "inmates" within the commonly understood meaning of the word and are therefore entitled to good time credits under secs. 53.11 and 53.12.

It is not necessary for the Youthful Offenders Act to refer to good time credit to make it available to respondents. Wisconsin distinguishes between mandatory and discretionary parole. Good time credits under secs. 53.11 and 53.12 are taken into account for mandatory release on parole. "When a prisoner has served his sentence less his good time credit, he is entitled to release as a matter of right." *State ex rel. Hauser v. Carballo,* 82 Wis.2d 51, 55, 261 N.W.2d 133 (1977). The Youthful Offenders Act expressly refers to a form of discretionary parole in sec. 54.10(2), permissible not earlier than six months after the date of commitment, so as to distinguish that parole from discretionary parole for adults under sec. 57.06(1) (a) who must first serve one-half of the minimum term prescribed for the offense.

Ch. 975, the Sex Crimes Law, contains a specific provision, sec. 975.12(2), extending good time credits to persons committed as sex deviates. The department suggests this indicates that the legislature believed it was necessary to include a specific provision in the Sex

Crimes Law to make sex deviates eligible for good time and hence the Youthful Offenders Act, which omits such a provision, does not contemplate good time credits. On the contrary, sec. 975.12(2) was necessary to give sex deviates different mandatory parole treatment than that applicable to inmates generally. Sec. 975.12(2) provides that sex deviate commitments after July 1, 1970, are subject to the good time credit statutes, secs. 53.11 and 53.12, but if the department is of the opinion that mandatory release on parole pursuant to sec. 53.11(7)(a) "would be dangerous to the public, it shall either make an order directing that the person remain subject to its control or make an order suspending the provisions of sec. 53.11(7)(a). . ."

The department argues that youthful offenders are not entitled to good time credits because sec. 53.11 only applies to persons who are serving sentences [references to sentences appearing in subs. (1), (3) and (7)(a) and (b)], while youthful offenders "are not serving sentences; rather, they are under commitment to the Department." The difference to the youthful offender at Fox Lake is neither apparent nor real: whether "sentenced" or "committed," he serves his term in a penitentiary. The Supreme Court has already construed sec. 53.11 from the standpoint of the inmate and prison administration to whom time is time, no matter how imposed. The court found that sec. 53.11(3), which deals with computation of good time under multiple convictions, "speaks from the viewpoint of the inmate and the prison administration," and saw "no difference" in imprisonment as the consequence of four convictions by one court as opposed to imprisonment because of three convictions by one court and a fourth by another. *State ex rel. Hake v. Burke,* 21 Wis.2d 405, 409, 124 N.W.2d 457 (1963). We see no difference under secs. 53.11 and 53.12 between imprisonment as a consequence of "sentence" or of "commitment."

Further evidence of the illusory nature of the distinction between sentence and commitment, for purposes of good time credits, is found in the statutes which provide that adults are "sentenced to the Wisconsin state prisons" but "female persons convicted of a felony may be committed to the Taycheedah correctional institution." Sec. 973.01(1)(a) and (3). Taycheedah is a penitentiary. Sec. 53.01. There is no doubt but that males and females alike are entitled to good time credits.

The department concedes that if youthful offenders are denied good time credits, then some youthful offenders will serve longer terms than similarly circumstanced adults who benefit from good time credits. Good time, however, is the reward to "each inmate who shall conduct himself in a proper manner and perform all the duties required of him. . ." Sec. 53.11(1). Industrial good time is an additional reward "to every inmate whose diligence in labor or study surpasses the general average. . ." Sec. 53.12(1). "(P)arole is the overwhelming consideration for every prisoner."[2] "Prisoners are jealous of their good time earnings and feel that a considerable injustice is done when, once earned, such time is taken away. . ."[3] To reward the adult inmate but not the similarly circumstanced youthful offender would penalize the latter. The future advantages of having been a youthful offender may be of little weight to the inmate who sees others leave while he stays. If the legislature intended that poignant injustice as part of "specialized treatment efforts"[4] under the Youthful Offenders Act,

---

[2] Note, Procedural Due Process in Parole Release Proceedings—Existing Rules, Recent Court Decisions, and Experience in the Prison, 60 Minn. L. Rev. 341, 353, n. 58 (1976), quoted in *State ex rel. Hauser v. Carballo*, 82 Wis.2d at 66.

[3] Model Penal Code, Tent. D. No. 5, Comment to sec. 305.9 at 83 (1956), Id.

[4] Sec. 54.01(2).

we would expect an express exclusion of good time credits from that treatment.

It is unnecessary to consider the constitutional issue raised by respondents.

*By the Court.*—The judgment is affirmed.