STATE of Wisconsin EX REL. Billy Wayne CLIFTON, Petitioner-Respondent,

v.

Warren YOUNG, Superintendent, Waupun Correctional Institution, and Linda Reivitz, Secretary, Department of Health & Social Services, Respondents-Appellants. [Case No. 86-0203.]

STATE of Wisconsin EX REL. John J. WATSON, Petitioner-Respondent.

v.

Warren YOUNG, Superintendent, Wisconsin Correctional Institution, and Linda Reivitz, Secretary, Department of Health & Social Services, Appellants.† [Case No. 85-2161.]

Court of Appeals

*Nos. 86-0203, 85-2161. Submitted on briefs July 8, 1986.—Decided August 21, 1986.*

(Also reported in 394 N.W.2d 769.)

† Petition to review denied.

For the appellants, respondents-appellants and cross-respondents, the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Michael R. Klos,* assistant attorney general.

For the petitioner-respondent and cross-appellant, the cause was submitted on the brief of *Kenneth P. Casey,* assistant state public defender.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J. This is a consolidated appeal. The Department of Health and Social Services and the Waupun Correctional Institution (collectively, "the department" ) appeal from separate orders of the circuit directing them to give "good time"[1] credit to two mandatory release parole violators, Billy Wayne Clifton and John J. Watson. The issues are: (1) whether habeas corpus is a proper means for review of the department's determination; and (2) whether the department abused its discretion by basing its decision on an invalid rule. We are satisfied that habeas corpus is an appropriate remedy under sec. 227.40(2)(d), Stats.[2] We also agree with the trial court that because the department's determination rests on a rule that was not adopted pursuant

---

[1] Under sec. 53.11(7)(a), Stats. (1981), an inmate is entitled to mandatory release after serving his or her sentence, less good time. Generally, an inmate earns good time under a statutory formula. Good time is, of course, always subject to forfeiture for conduct violations.

[2] Chapter 227, Stats., has been renumbered by 1985 Wisconsin Act 182, effective April 22, 1986. All references to ch. 227 are to the renumbered statutes.

to the requirements of ch. 227, it must be reversed. Unlike the trial court, however, we do not decide the ultimate question of whether Clifton and Watson should be allowed good time; rather, we remand to the department so that it may exercise the discretion committed to it by sec. 53.11(7)(b), Stats. (1981).

Clifton and Watson were both paroled from prison when they reached their mandatory release dates—the conclusion of the terms to which they were sentenced, less accumulated good time. Both men violated the terms of their release, resulting in revocation of parole and forfeiture of all good time earned prior to release. When they were returned to prison to serve out their full sentence terms, they were, in effect, serving forfeited good time. The department, in the exercise of its authority under sec. 53.11(7)(b), Stats. (1981), determined that both Clifton and Watson should be denied the privilege of earning good time for the remainder of their incarceration.

In making that determination, department hearing examiners followed the procedures set forth in a memorandum issued on February 11, 1982, by the department's executive assistant, Eric O. Stanchfield. The memorandum states in part:

> The following procedures are adopted to further define the good time forfeiture procedures of the Department and provide uniform application of HSS 302.23, HSS 302.24 and HSS 328.24.
>
> When the discretionary parole or mandatory release of an individual is revoked, a hearing shall be held under HSS 328.24, unless waived as provided therein, to determine whether good time is to be forfeited, and, if so, the amount to be forfeited. If good time is forfeited, the hearing examiner shall

also determine whether the individual shall be allowed to earn good time credit under Stats., on the time forfeited.

*In deciding whether to allow an individual to earn good time credit on the forfeited time, the hearing examiner shall take into consideration the factors described in HSS 328.24(2), other mitigating or aggravating circumstances, and overall goals and objectives of supervision under HSS Chapter 328.* The decision of the hearing examiner shall be in writing and, unless otherwise specified by the hearing examiner, the phrase "good time credits" shall be interpreted to include credits under both secs. 53.11 and 53.12, Stats. [Emphasis added.]

The rule referred to in the memorandum, Wis. Adm. Code, sec. HSS 328.24 (December 1981), deals generally with good time forfeiture hearings. It directs probation and parole agents, when making forfeiture recommendations, to consider the client's institutional conduct record, his or her behavior while on parole, the nature and severity of the original offense, the time remaining before mandatory release, and "[w]hether forfeiture would be consistent with the goals and objectives of field supervision." Sec. HSS 328.24(2)(b).

Clifton and Watson petitioned the circuit court for a writ of habeas corpus, claiming various due process and equal protection violations. Among other things, they contended that the Stanchfield memorandum was, in effect, a rule and that, because it was not promulgated under ch. 227, Stats., it was null and void. Because the hearing examiners were guided by the memorandum in making their determinations, it was argued that those decisions were also void. The circuit court agreed, reversing the department's decisions and recalculating

Clifton's and Watson's mandatory release dates to include good time credit.

## I. HABEAS CORPUS

Sections 227.40(1) and (2), Stats., prescribe the exclusive procedures for challenging an administrative rule. *Sewerage Commission of Milwaukee v. DNR*, 102 Wis.2d 613, 629, 307 N.W.2d 189, 197 (1981). Generally, such a challenge must take the form of a declaratory judgment action, or one of five proceedings enumerated in the statute.[3] The department contends that the validity of the Stanchfield "rule" was never properly before the court because Clifton's and Watson's action was not a declaratory judgment proceeding, nor did it qualify as one of the five exceptions listed in sec. 227.40(2), Stats. We disagree.

Section 227.40(2)(d), Stats., permits the validity of an administrative rule to be raised in "[h]abeas corpus proceedings relating to criminal prosecution." The department argues that this provision does not apply because Clifton's and Watson's actions do not "relate" to criminal prosecutions, but only to administrative actions denying them the privilege to earn good time.

However, nontechnical words and phrases in a statute are construed in accordance with their common and ordinary usage. *Silas v. Percy*, 85 Wis.2d 716, 718, 271 N.W.2d 171, 173 (Ct. App. 1978). The dictionary defines "relate" as: "to show or establish a logical or causal

[3] The proceedings are: civil actions by the state to enforce a statute; criminal prosecutions; ordinance violation prosecutions; habeas corpus proceedings relating to criminal prosecution; and, in certain instances, judicial review proceedings. Sec. 227.40(2), Stats.

connection between." *Webster's Third New International Dictionary* 1916 (1976). Clifton and Watson are imprisoned because they were prosecuted for crimes. The length of time each is to serve is determined as part of that prosecution—initially by the trial court, and eventually by the department through its administration of the statutes and rules governing parole and mandatory release. While admittedly not a close one, the relation between the administrative action and the criminal prosecution is sufficient to permit a challenge by habeas corpus.

## II. VALIDITY OF THE RULE

If the Stanchfield memorandum is considered a rule within the meaning of ch. 227, Stats., it is invalid, for it was neither adopted nor promulgated pursuant to the requirements of that chapter. Sec. 227.40(4)(a); *Schoolway Transp. Co. v. Div. of Motor Vehicles*, 72 Wis.2d 223, 237–38, 240 N.W.2d 403, 410–11 (1976).

The department argues first that the status of the memorandum is immaterial because it has the discretionary authority to deny good time to mandatory release parole violators under sec. 53.11(7)(b), Stats. (1981). That section states that such persons, when returned to prison to serve the remainder of a sentence, "may earn good time on the balance of the sentence . . . ." We agree that the department possesses this authority and may exercise it on a case-by-case basis. In doing so, however, it may not act arbitrarily or otherwise abuse its discretion. *State ex rel. Knudsen v. Board of Education*, 43 Wis.2d 58, 67, 168 N.W.2d 295, 299 (1969).

In this case, the hearing examiners decided Clifton's and Watson's cases after the department had prepared and disseminated a memorandum stating that it was "adopting procedures" for determining good time forfeitures and directing the examiners to consider specific criteria in making those determinations. The status of the memorandum is far from immaterial; it is crucial to resolution of the appeal.

Section 227.01(13), Stats., defines "rule" as "a regulation, standard, statement of policy or general order of general application which has the effect of law and which is issued by an agency . . . to govern [its] organization or procedure . . . ." Section 227.10(1) requires administrative agencies to "promulgate as a rule each statement of general policy."

The Stanchfield memorandum does not speak to a specific case, nor is it limited to an individual inmate. It announces the general policies and the specific criteria under which all decisions on good time for mandatory release parole violations are to be made, now and in the future. The trial court correctly determined that the memorandum was a "rule" within the meaning of sec. 227.01(13), Stats., and that it was invalid for lack of proper adoption and promulgation. We are also satisfied that, by making this "rule" applicable to all such cases, and by deciding Clifton's and Watson's cases under improperly-adopted standards, the department abused its discretion.

As we have said, sec. 53.11(7)(b), Stats. (1981), reposes discretionary authority in the department to allow or disallow good time credit to returning mandatory release parole violators. The trial court, how-

200

ever, directed the department to grant good time to both Clifton and Watson. Because the department acted under invalid criteria, it never exercised its statutory discretion in either case, and we conclude that it should have the opportunity to do so. A reviewing court may not substitute its judgment for that of an agency on an issue of discretion. Sec. 227.57(8), Stats.

We therefore reverse in both cases and direct the circuit court to remand to the department so that it may properly exercise its discretion free from the constraints of the improperly-adopted "Stanchfield rule."

*By the Court.*—Orders reversed and causes remanded.