STATE of Wisconsin EX REL. Nancy KNIES, Relator, Plaintiff-Appellant,

v.

T. Michael SCHOBER and Steven J. Lownik, Defendants-Respondents.

Court of Appeals

*No. 86–1238. Submitted on briefs February 25, 1987.—Decided May 6, 1987.*

(Also reported in 409 N.W.2d 383.)

43

For the plaintiff-appellant the cause was submitted on the briefs of *Nancy Knies* of New Berlin.

For the defendants-respondents the cause was submitted on the brief of *George W. Greene* and *Mark P. Smith* of *Prosser, Wiedabach & Quale, S.C.* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   Nancy Knies (Knies) appeals from an order dismissing her action which sought *quo warranto* relief in contending that the city attorney of New Berlin and his assistant violated sec. 196.675, Stats. Knies argues that City Attorney T. Michael Schober and Assistant City Attorney Steven J. Lownik represented a common carrier in violation of the statute. We conclude that the statute was not violated because the carrier in question did not "retain or employ" Schober or Lownik within the terms of the statute. Accordingly, we affirm the order of the circuit court.

The record before us is sparse indeed. It would appear, however, that Harvey Rindt (Rindt), who operates a towing service, towed a vehicle at the behest of the New Berlin Police Department. He was

sued, presumably by Knies, and he tendered a defense to the city of New Berlin. Schober and Lownik, in their official capacities as city attorney and assistant city attorney, defended Rindt in that suit. Knies then brought this *quo warranto* action, claiming that the dictates of sec. 196.675, Stats., were violated. Knies alleged that Schober and Lownik were acting in their municipal capacities but did not contend that Rindt paid them for their services. The trial court rejected Knies's claim, holding that Rindt was a contract carrier, not a common carrier; that the statute is archaic; and that such an interpretation as that proffered by Knies "simply doesn't make sense." Knies appeals.

Section 196.675, Stats., reads as follows:

> (1) No common carrier operating within this state and no public utility, except a municipal public utility, may retain or employ a district attorney or assistant district attorney, city attorney or assistant city attorney or any person holding a judicial office.
> (2) If any district attorney or assistant district attorney, city attorney or assistant city attorney or any person holding a judicial office violates this section, the attorney's or judge's office shall be deemed vacant.
> (3) This section does not apply to court commissioners and does not prohibit a city attorney or assistant city attorney employed by a city on a part-time basis from being employed and retained by a railroad not operating within the city.

Knies argues that Rindt is a common carrier[1] and retained or employed Schober and Lownik. We are unpersuaded that the statute applies to situations such as these where the city undertakes representation of a carrier which acted as an agent of the city.

██The interpretation of a statute is a question of law. *City of Madison v. Donohoo*, 118 Wis. 2d 646, 651, 348 N.W.2d 170, 173 (1984). We need not give special deference to the circuit court's determination of such an issue. *Tahtinen v. MSI Ins. Co.*, 122 Wis. 2d 158, 166, 361 N.W.2d 673, 677 (1985). The crucial question here is whether Schober and Lownik were retained or employed by Rindt. We conclude they were not.

We begin by looking to the common and ordinary meanings of "retain" and "employ," for which we may use a recognized dictionary. *See Silas v. Percy*, 85 Wis. 2d 716, 718–19, 271 N.W.2d 171, 173 (Ct. App. 1978). "Retain" means "to employ (a lawyer) by paying a preliminary fee that secures a prior claim upon services in case of need ... ." Webster's Third New International Dictionary 1938 (1976). An alternative definition is "[t]o engage the services of an attorney or counsellor to manage a specific matter or action or all legal matters in general." Black's Law Dictionary 1183 (5th ed. 1979). "Employ" means "to use or engage the services of ... : to provide with a job that pays wages or a salary or with a means of earning a living ... ." Webster's, *supra* at 743. Black's defines it as "[t]o engage in one's service; to hire; to use as an agent or substitute in transacting business; to commission and

---

[1]Because we resolve this case on the basis of the "retain or employ" language, we need not and do not decide Rindt's status as a common carrier, but rather we assume it *arguendo*.

46

intrust with the performance of certain acts or functions or with the management of one's affairs ... ." Black's, *supra* at 471.

■

By these definitions, we are persuaded that the terms "retain" and "employ" are here ambiguous. On the one hand, the terms can signify an undertaking or arrangement through which the city attorney would receive some benefit; on the other hand, the terms can signify the broader concept of mere representation in any capacity, regardless of benefit. As a result, whether Schober and Lownik's actions are forbidden by the terms of the statute becomes a question about which reasonable persons could differ; hence, the statute is ambiguous. *See Kollasch v. Adamany,* 104 Wis. 2d 552, 561, 313 N.W.2d 47, 51–52 (1981). We construe an ambiguous statute in relation to its scope, history, context, subject matter and object to be accomplished or remedied. *Id.* at 563, 313 N.W.2d at 52–53.

We note that the precursor of present sec. 196.675, Stats., was originally enacted in 1907;[2] consequently, no drafting records exist and there is no legislative history available. Despite the statute's eighty-year history, we are aware of no appellate case which has construed it before. There are, however, some opinions of the attorney general which are helpful, most notably one which sets forth the purpose of the statute:

> The purpose of this law was to prevent the district attorney or city attorney from accepting professional employment from the classes of quasi-public corporations therein enumerated because the interests of such corporations frequently con-

[2]Section 1, ch. 542, Laws of 1907.

flict with the public interests and wise public policy requires that the district attorney or city attorney should be in a position at all times to serve the public unreservedly and without the embarrassment arising from conflicting duties.

4 Op. Att'y Gen. 762, 763 (1915). That opinion goes on to state that "the purpose of the statute [is] to protect public interests ... ." *Id.*

These statements aid in our search for the legislative intent. The statute aimed to prevent conflicts between the municipal interests and those of quasi-public corporations by insuring that city and district attorneys could not put themselves in positions where they would be obliged to serve two masters.

That the statute was intended to preclude city and district attorneys from being employed by public utilities or common carriers where the public and private interests do not coincide is illustrated by a variety of early opinions of the attorney general. For example, the attorney general opined that a district attorney could not accept a retainer from a power company which still leased a power house and machinery to the city. 1908 Op. Att'y Gen. 766. Nor could a district attorney (evidently then parttime) who was about to join a law firm receive any benefit, "directly or indirectly," from his associates who might be retained or employed individually by a public utility or a common carrier. 1910 Op. Att'y Gen. 629, 630. *See also* 3 Op. Att'y Gen. 700 (1914).

We are persuaded that the 1977 amendment[3] to sec. 196.675, Stats., also bolsters our interpretation. Subsection (3) now reads: "This section does not apply to court commissioners and does not prohibit a city

---

[3]Section 1, ch. 236, Laws of 1977.

attorney or assistant city attorney employed by a city on a part-time basis from being employed and retained by a railroad not operating within the city." It is clear that this subsection carves out an exception to the blanket provision of subsec. (1) because there would be no conflict of interests where the railroad does not operate within the city. We also note that the drafting request from the Legislative Reference Bureau drafting record indicates that the subject of Senate Bill 281, the source of this amendment, is listed as "conflict of interest in utilities for part time ct. commissioners & city attornies."

Scant though this background material is, we believe it compels a narrow, rather than a broad, interpretation of "retain or employ." Such a strict reading is also consonant with the statute's punitive nature. *See Capt. Soma Boat Line v. City of Wis. Dells,* 56 Wis. 2d 838, 845, 203 N.W.2d 369, 372 (1973); *see also* 1910 Op. Att'y Gen. 654. As a result, we hold that the language "retain or employ" does not apply to the instant situation where the city's and the carrier's interests were aligned rather than conflicting, since the public interest in such a situation is not jeopardized by a conflict or possible conflict. Accordingly, we affirm the order of the trial court.

We parenthetically note that one of the bases for the trial court's holding was the "archaic" nature of the statute. While we do not affirm on that basis, we agree with that evaluation. Section 1 of 1983 Wis. Act 53, which act made numerous changes to ch. 196, Stats., provides, in part:

> (1) Much of the law on regulation of public utilities by the public service commission was

created in 1907, has not been revised since then and contains extensive defects, anachronisms, conflicts, ambiguities and obsolete provisions.

. . . .

(3)  The revisor of statutes, by 1990, in cooperation with the law revision committee, has been instructed by the legislature, under section 13.93(2)(j) of the statutes, to "systematically examine and identify for revision by the legislature the statutes and session laws to eliminate defects" which the revisor finds to exist in the law and to prepare legislation that eliminates such defects.

. . . .

(5)  The revision of chapter 196 of the statutes under this act was accomplished by a time-consuming process over a 3-year period in which public utility practitioners representing a variety of public and private interests, including the public service commission, the utility industry, and utility consumers, closely scrutinized and discussed together all proposed changes and made only those changes about which there was consensus.

Despite the 1977 amendment to subsec. (3) mentioned earlier, sec. 196.675, Stats., remains anachronistic and ambiguous. Legislative action to eliminate this confusion would be beneficial.

*By the Court.*—Order affirmed.